# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SCOTT BOYD, *on behalf of himself and all others similarly situated,* | ) ) ) | Case No. 1:22-cv-00825-LY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PUBLIC EMPLOYEES CREDIT UNION | ) ) ) | |
| Defendant. | ) ) | |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement, dated as of this 8th day of December 2022, is made and entered into by and among the following Settling Parties (as defined below): (i) Scott Boyd ("Plaintiff"), individually and on behalf of the Settlement Class (as defined below), by and through his counsel of record MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC ("Plaintiff's Counsel"); and (ii) Public Employees Credit Union ("PECU"), by and through its counsel of record, BAKER & HOSTETLER LLP.  The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

Plaintiff alleges that on April 26, 2022, PECU detected "unauthorized activity on its computer network…and subsequently determined that an unauthorized person accessed and obtained certain files that contained consumer PII, including those of Plaintiff and the Class." *Complaint* at ¶ 23.  Plaintiff further alleges that an "unknown party accessed and/or acquired documents that contained sensitive information about Defendant's current and former customers,

including names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), and Social Security numbers, and 'other' types of personally identifiable information." *Id.* at ¶ 24. Plaintiff also alleges that he received notice from PECU dated July 7, 2022. *Id.* at ¶ 13. Following this notification, Plaintiff filed this lawsuit asserting various claims against PECU relating to the Data Incident as defined below (the "Litigation").

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against PECU and the Released Persons (as defined below) relating to the Data Incident, by and on behalf of Plaintiff and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other individuals originating, or that may originate, in jurisdictions in the United States of America ("United States", as defined below) against PECU and the Released Persons relating to the Data Incident.

## II.     CLAIMS OF PLAINTIFF AND BENEFITS OF SETTLING

Plaintiff believes that the claims asserted in the Litigation, as set forth in the Complaint, have merit. Plaintiff and Class Counsel (as defined below) recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against PECU through motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Class Counsel are highly experienced in class-action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue in cybersecurity incident litigation in general and in this Litigation in particular. They have determined that the

settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

PECU denies each and all of the claims and contentions alleged against it in the Litigation. PECU denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation.  Nonetheless, PECU has concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.  PECU has considered the uncertainty and risks inherent in any litigation.  PECU has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiff, individually and on behalf of the Settlement Class, Class Counsel, and PECU that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.    Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Agreement" or "Settlement Agreement" means this agreement.

1.2     "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator (as defined below).

1.3     "Claims Administrator" means Kroll Settlement Administration LLC, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data-breach litigation.

1.4     "Claims Deadline" means the postmark and/or online submission deadline for Valid Claims (as defined below) pursuant to ¶ 2.1.3.

1.5     "Claim Form" means the form utilized by the Settlement Class Members to submit a Settlement Claim (as defined below) for reimbursement.  The Claim Form will be substantially in a form as shown in **Exhibit C** attached hereto, which will be available on both the Settlement Website (as defined below) and in paper format, if specifically requested by a Settlement Class Member.

1.6     "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.7     "Court" means the United States District Court for the Western District of Texas (Austin Division).

1.8     "Data Incident" means the unauthorized access to PECU's systems and certain files containing sensitive information about PECU's current and former customers including, but not limited to, names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), Social Security numbers, and other types of personally identifiable information, and which was discovered by PECU on or about April 26, 2022.

4861-5497-7089.1

1.9     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.10 herein have occurred and been met.

1.10     "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court; (ii) the Court has entered a Judgment (as defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.11     "Judgment" means a judgment rendered by the Court, substantially in the form as shown in **Exhibit E**.

1.12     "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in **Exhibit B**  hereto.

1.13     "Objection Date" means the date by which Settlement Class Members must mail their objection to the settlement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.14     "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.15     "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative,

trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.16    "PII" means, but is not limited to, individual names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), Social Security numbers, and other types of personally identifiable information leading to notification regarding the Data Incident.

1.17    "Plaintiff" or "Class Representative" means Scott Boyd.

1.18    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class, substantially in the form as shown in **Exhibit D** hereto.  The Settling Parties' will prepare a mutually agreeable Preliminary Approval Order.

1.19    "Settlement Class Counsel" and/or "Class Counsel" means Gary M. Klinger of the law firm MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC.

1.20    "Related Entities" means Public Employees Credit Union ("PECU") and its respective past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of its and their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

6

1.21   "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; violations of any Texas and similar state consumer protection statutes including but not limited to the California Consumer Privacy Act and California Unfair Competition Law; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.  Released Claims shall not include the right of any Settlement Class Member, Class Counsel, or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.22    "Released Persons" means PECU and the Related Entities.

1.23    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.24    "Settlement Class" means "All persons who were sent written notification by Public Employees Credit Union ("PECU") that their PII was potentially compromised as a result of the unauthorized access to PECU's network that PECU discovered on or about April 26, 2022 (the "Data Incident")." The Settlement Class specifically excludes: (i) PECU, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.25    "Settlement Class Member(s)" or "Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.26    "Settlement Website" means the website described in ¶ 3.2(c).

1.27    "Settling Parties" means, collectively, PECU and Plaintiff, individually and on behalf of the Settlement Class.

1.28    "Short Notice" means the content of the mailed notice to the proposed Settlement Class Members, substantially in the form as shown in **Exhibit A** attached hereto. The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members, among other things, of the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing (as defined below).

8

1.29    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiff intends to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 *et seq*., Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT,  IF KNOWN BY HIM OR HER, WOULD  HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Plaintiff, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the

Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.30 "United States" as used in this Settlement Agreement includes all 50 states, the District of Columbia and all territories.

1.31 "Valid Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the claims processing and/or dispute resolution process described in ¶ 2.5.

**2. Settlement Benefits**

2.1 Expense Reimbursement.

2.1.1 *Documented Ordinary Losses*

a) *Documented Out-Of-Pocket Expenses.* All Settlement Class Members who submit a Valid Claim using the Claim Form, including necessary supporting documentation, are eligible for the following documented out-of-pocket expenses, not to exceed $500 per Settlement Class Member, that were incurred as a result of the Data Incident: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (if charged based on the amount of data used); (v) postage;  and (vi) gasoline for local travel purchased by Settlement Class Members between April 26, 2022 and the Claims Deadline. Claims for documented out-of-pocket expenses may be combined with claims for documented fees for credit reports, credit monitoring or other identity theft insurance products and reimbursement of lost time and are subject to the same $500 cap. To receive reimbursement for

documented out-of-pocket expenses, Settlement Class Members must submit a Valid Claim, including documentation supporting their claims, to the Claims Administrator. This can include receipts or other documentation that is "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents, such as handwritten receipts, can also be considered to add clarity or support other submitted documentation. Any "self-prepared" documentation is subject to the Settlement Administrators review for plausibility.

b) *Documented Fees for Credit Reports, Credit Monitoring, or Other Identity Theft Insurance Products.* All Settlement Class Members who submit a Valid Claim using the Claim Form, including necessary supporting documentation, are eligible to receive reimbursement for credit reports, credit monitoring, or other identity theft insurance products purchased between April 26, 2022 and the Claims Deadline, not to exceed $500 per Settlement Class Member.  Claims for fees for credit reports, credit monitoring, or other identity theft insurance products may be combined with claims for documented out-of-pocket expenses and reimbursement of lost time and are subject to the same $500 cap.  To receive reimbursement for documented fees for credit reports, credit monitoring, or other theft insurance products, Settlement Class Members must submit a Valid Claim, including documentation supporting their claims, to the Claims Administrator. This can include receipts or other documentation that is "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents, such as handwritten receipts, can also be considered to add clarity or support other submitted documentation. Any "self-prepared" documentation is subject to the Settlement Administrators review for plausibility.

c) _Reimbursement of Lost Time._ Settlement Class Members are also eligible to receive reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident (calculated at the rate of $20 per hour), but only if at least one (1) full hour was spent dealing with the Data Incident. Settlement Class Members may receive up to three (3) hours of lost time if the Settlement Class Member (i) attests that any claimed lost time was spent responding to issues raised by the Data Incident; and (ii) provides a written description of how the claimed lost time was spent related to the Data Incident. Claims for reimbursement of lost time may be combined with claims for documented out-of-pocket expenses and documented fees for credit reports, credit monitoring, or other identity theft insurance products and are subject to the same $500 cap.

2.1.2  _Documented Extraordinary Losses._ Settlement Class Members are also eligible to receive reimbursement for documented Extraordinary Losses, not to exceed $2,500 per Settlement Class Member for documented monetary losses if the loss: (i) is actual, documented, and unreimbursed; (ii) was more likely than not caused by the Data Incident; (iii) occurred between April 26, 2022 and the Claims Deadline; and (iv) is not already covered by one or more of the above-referenced reimbursable expense categories under documented Ordinary Losses. Settlement Class Members must also have made reasonable efforts to avoid, or seek reimbursement for, such Extraordinary Losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. Settlement Class Members with Extraordinary Losses must submit substantial and plausible documentation supporting their claims. This can include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive

reimbursement for Extraordinary Losses, but can be considered to add clarity or support other submitted documentation and a description of how the time was spent.

2.1.3  Settlement Class Members seeking reimbursement under ¶ 2.1 must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th day after the deadline for the commencement of notice to Settlement Class Members as set forth in ¶ 3.2(d) (the "Claims Deadline").  The notice to the Settlement Class will specify this deadline and other relevant dates described herein.  The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief.  Notarization shall not be required.  Failure to provide supporting documentation for Ordinary Losses (other than reimbursement of lost time) and Extraordinary Losses, referenced above, as requested on the Claim Form, shall result in denial of a claim.  For the reimbursement of up to three (3) hours of lost time claimed by Settlement Class Members, the Settlement Class Member must provide an attestation that the time claimed was spent responding to issues raised by the Data Incident and a description of how the time was spent.

2.2     Limitation on Reimbursable Expenses.  Nothing in this Settlement Agreement shall be construed as requiring PECU to provide, and PECU shall not be required to provide, for a double payment for the same loss or injury that was reimbursed or compensated by any other source.  No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

2.3  Identity Theft Protection. All Settlement Class Members who have enrolled in the one year of credit monitoring previously offered by PECU shall have the term of the credit monitoring previously offered automatically extended by one (1) year, without requiring the filing of a claim

for monetary compensation. Any Settlement Class Members who did not previously enroll for credit monitoring offered by PECU shall have the ability to make a claim for one (1) year of credit monitoring under the same service previously offered by PECU, without requiring the filing of a claim for monetary compensation. PECU will pay for the credit monitoring services separate and apart from other settlement benefits.

2.4    <u>Information Security Improvements</u>. PECU has agreed to provide sufficient documentation to demonstrate that it either has implemented or will implement various security related measures through December 31, 2023. Costs associated with these information security improvements will be paid by PECU separate and apart from other settlement benefits. PECU agrees to provide confirmatory discovery establishing the appropriateness of settlement terms as contemplated under Fed. R. Civ. P. 23(b)(1). A copy of the information security improvements may be filed with the Court, under seal, pursuant to an agreed upon Confidentiality Order entered by the Court.

2.5    <u>Dispute Resolution for Claims</u>.

2.5.1    The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (i) the claimant is a Settlement Class Member; (ii) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.1; and (iii) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Data Incident. The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.,* documentation requested on the Claim Form, and required documentation regarding the claimed losses. The Claims Administrator's initial review

will be limited to a determination of whether the claim is complete and plausible. For any claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those claims to the Settling Parties (one Plaintiff's lawyer shall be designated to fill this role for Plaintiff). If the Settling Parties do not agree with the Claimant's claim, after meeting and conferring, then the claim shall be referred to a claims referee for resolution. The Settling Parties will mutually agree on the claims referee should one be required.

2.5.2    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant twenty-one (21) days to cure the defect before rejecting the claim. Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later. In the event of unusual circumstances interfering with compliance during the twenty-one (21) day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the twenty-one (21) day deadline in which to comply; however, in no event shall the deadline be extended to later than six (6) months from the Effective Date. If the defect is not timely cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.5.3    Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have ten (10) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is facially valid, then the claim shall be paid.

If the Claim Administrator determines that such a claim is not facially valid because the claimant has not provided all information needed to complete the Claim Form and enable the Claim Administrator to evaluate the claim, then the Claim Administrator may reject the claim without any further action.  If the claim is rejected in whole or in part, for other reasons, then the claim shall be referred to the claims referee.

2.5.4    If any dispute is submitted to the claims referee, the claims referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days of the claims referee's receipt of the submitted dispute.  The claims referee may make any other final determination of the dispute or request further supplementation of a claim within thirty (30) days of the claims referee's receipt of the submitted dispute.  The claims referee's determination shall be based on whether the claims referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Data Incident.  The claims referee shall have the power to approve a claim in full or in part.  The claims referee's decision will be final and non-appealable.  Any claimant referred to the claims referee shall reasonably cooperate with the claims referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the claims referee to verify the claim through third-party sources, and failure to cooperate shall be grounds for denial of the claim in full.  The claims referee shall make a final decision within thirty (30) days of the latter of the following events: its receipt of the submitted dispute and receipt of all supplemental information requested.

2.6    <u>Settlement Expenses.</u>  All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of dispute resolution described in ¶ 2.5, shall be paid by PECU.

2.7    <u>Settlement Class Certification.</u>    The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.    If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.    The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

**3.    Order of Preliminary Approval and Publishing of Notice of Fairness Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Plaintiff's Counsel and counsel for PECU shall jointly submit this Settlement Agreement to the Court, and Plaintiff's Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a mutually agreeable Preliminary Approval Order requesting, *inter alia:*

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.7;

b)    preliminary approval of the Settlement Agreement as set forth herein;

c)    appointment of Gary M. Klinger of MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC as Class Counsel;

d)    appointment of Plaintiff as Class Representative;

e)    approval of a customary form of Short Notice to be mailed by first-class United States Postal Service ("USPS") mail to Settlement Class Members in a form substantially similar to **Exhibit A**, attached hereto.

17

f)    approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to **Exhibit B**, attached hereto, which, together with the Short Notice, shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, the requested attorneys' fees, and the date, time and place of the Final Fairness Hearing;

g)    approval of the Claim Form to be available on the Settlement Website for submitting claims and available in .pdf format on the Settlement Website for or if specifically requested by the Settlement Class Member, in a form substantially similar to **Exhibit C**, attached hereto; and

h)    appointment of Kroll Settlement Administration LLC as the Claims Administrator.

3.2    PECU shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration.  Any attorneys' fees, costs, and expenses of Plaintiff's Counsel, and a service award to the Class Representative, as approved by the Court, shall be paid by PECU as set forth in ¶ 7 below.  Notice shall be provided to Settlement Class Members by the Claims Administrator as follows:

a)    *Class Member Information*: Within fourteen (14) days of entry of the Preliminary Approval Order, PECU shall provide the Claims Administrator with the name, physical address, and email, if available, of each Settlement Class Member (collectively, "Class Member Information") that PECU and/or the Released Entities possess. PECU warrants and represents that it will provide the most current Class

18

Member Information for all Settlement Class Members as such information is contained in its or the Released Entities' records.

b) The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the Settlement as provided in this Agreement, or to provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

c) *Settlement Website:* Prior to the dissemination of the Short Notice, the Claims Administrator shall establish the Settlement Website, that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Agreement; (v) the operative Class Action Complaint filed in the Litigation; (vi) Class Counsel's Application for Attorneys' Fees and Expenses and Service Award for Class Representative; and (viii) any other materials agreed upon by the Settling Parties and/or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form, and supporting documentation, electronically.

d) *Short Notice:* Within forty-five (45) days of entry of the Preliminary Approval Order and to be substantially completed not later than sixty (60) days after entry of

19

the Preliminary Approval Order, subject to the requirements of this Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class members as follows:

- via first-class USPS mail to the postal address provided to PECU and/or the Released Entities by the Settlement Class Members. Before any mailing under this paragraph occurs, the Claims Administrator shall run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS within thirty (30) days of entry of the Preliminary Approval Order;

- in the event that a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is not valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice;

- in the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out Date and the Objection Date, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator shall perform a standard skip trace, in the manner that

20

the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing.

- The date of the first-mailing of the Short Notice shall be deemed the "notice commencement date" for purposes of calculating the opt-out and objection deadlines, and all other deadlines that flow from the notice commencement date

e)    Publishing, on or before the date of mailing the Short Notice, the Claim Form and the Long Notice on the Settlement Website as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the claim period;

f)    A toll-free help line shall be made available to provide Settlement Class Members with additional information about the settlement and to respond to Settlement Class Members' questions.  The Claims Administrator also will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request to Settlement Class Members; and

g)    Contemporaneously with seeking Final approval of the Settlement, Class Counsel and PECU shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

21

3.3    The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. The notice program shall commence within forty-five (45) days after entry of the Preliminary Approval Order and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

3.4    Class Counsel and PECU's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.5    PECU will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after this Settlement Agreement is filed with the Court.

**4.    Opt-Out Procedures**

4.1    Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked no later than sixty (60) days after the date on which the notice program commences pursuant to ¶ 3.2(d).

4.2    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any cash benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the

4861-5497-7089.1

Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than one hundred (100) timely and valid Opt-Outs (exclusions) submitted, PECU may, by notifying Class Counsel and the Court in writing, void this Settlement Agreement.  If PECU voids the Settlement Agreement pursuant to this paragraph, PECU shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and service awards and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## 5.     Objection Procedures

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3)

4861-5497-7089.1

years.  To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court and contain the case name and docket number *Boyd v. Public Employees Credit Union,* Case No. 1:22-CV-00825-LY (the "*PECU* Action"), no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d), and served concurrently therewith upon Class Counsel, Gary M. Klinger, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC, 227 W. Monroe Street, Suite 2100, Chicago, Illinois, 60606; and counsel for PECU, Michelle Gomez and Casie Collignon, Baker & Hostetler, LLP, 1801 California Ste. 4400, Denver, Colorado 80202.

5.2     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.    Releases**

6.1     Upon the Effective Date, each Settlement Class Member (who has not timely and validly excluded himself or herself from the Settlement), including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.  Further, upon the Effective Date,  and  to the fullest extent permitted by law, each Settlement Class Member (who has not timely and validly excluded himself or herself from the Settlement), including Plaintiff, shall, either directly,

indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2    Upon the Effective Date, PECU shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiff, each and all of the Settlement Class Members, Class Counsel and Plaintiff' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims.  Any other claims or defenses PECU may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3    Notwithstanding any term herein, neither PECU nor their Related Parties, shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Plaintiff, each and all of the Settlement Class Members, Class Counsel and Plaintiff's Counsel.

6.4    Nothing in this ¶ 6 shall preclude any action to enforce the terms of this Settlement Agreement by Plaintiff, Settlement Class Members, Class Counsel, and/or PECU.

**7.    Plaintiff' Counsel's Attorneys' Fees, Costs, and Expenses; Service Award to Plaintiff**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Plaintiff, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that PECU would not object to a request for reasonable attorneys' fees, costs, expenses, and a service award to Plaintiff as may be ordered by the Court.  PECU and Class Counsel then negotiated and agreed to the provisions described in ¶¶ 7.2 and 7.3. PECU shall pay any attorneys' fees, costs, expenses and/or service award to Plaintiff, as provided for in ¶¶ 7.2 and 7.3, separate and apart from any benefits provided to Settlement Class Members and the costs of notice and Claims Administration.

7.2     PECU has agreed not to object to a request by Class Counsel for attorneys' fees, inclusive of any costs and expenses of the Litigation, subject to Court approval, in an amount not to exceed $190,000.  Class Counsel, in their sole discretion, shall allocate and distribute any amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiff's Counsel.

7.3      Subject to Court approval, PECU has agreed not to object to a request for a service award in the amount of $1,500 to the named Plaintiff (for a total payment of $1,500).

7.4     If awarded by the Court, PECU shall pay the attorneys' fees, costs, expenses, and service awards to Plaintiff, as set forth above in ¶¶ 7.2, 7.3, and 7.4, within twenty-one (21) days after the Effective Date.  Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiff's Counsel and service awards to Plaintiff consistent with ¶¶ 7.2 and 7.3.

7.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Plaintiff, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described

herein.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service awards ordered by the Court to Class Counsel or Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

### 8.    Administration of Claims

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.1.  Class Counsel and PECU shall be given reports as to both claims and distribution and have the right to review and obtain supporting documentation to the extent necessary to resolve claims administration issues.  The Claims Administrator's and claims referee's, as applicable, determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth in ¶ 2.5.  All claims agreed to be paid in full by PECU shall be deemed a Valid Claim.

8.2    Checks for Valid Claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

8.3    All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise expressly allowed by law or the Settling Parties' written agreement, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4     No Person shall have any claim against the Claims Administrator, Claims Referee, PECU, Released Persons, Class Counsel, Plaintiff, Plaintiff's Counsel, and/or PECU's counsel based on distributions of benefits to Settlement Class Members.

8.5     Information submitted by Settlement Class Members in connection with submitted claims under this Settlement Agreement shall be deemed confidential and protected as such by the Claims Administrator, Claims Referee, Class Counsel, and counsel for PECU.

**9.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)     PECU has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)     the Judgment has become Final, as defined in ¶ 1.11.

9.2     If all conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Class Counsel and counsel for PECU mutually agree in writing to proceed with the Settlement Agreement.

9.3      Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Class Counsel and to PECU's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

4861-5497-7089.1

9.4     In the event that the Settlement Agreement or the releases set forth in ¶¶ 6.1, 6.2, and 6.3 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms: (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement.  Further, notwithstanding any statement in this Settlement Agreement to the contrary, PECU shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, and Claims Administration, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

**10.    Miscellaneous Provisions**

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement; and (iii) agree to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims that

are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth in the Settlement Agreement.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action related to the Data Incident that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5     The Settlement Agreement contains the entire understanding between PECU and Plaintiff regarding the payment of the *PECU* Action and supersedes all previous negotiations, agreements, commitments, understandings, and writings between PECU and Plaintiff in connection with the payment of the *PECU* Action.  Except as otherwise provided herein, each party shall bear its own costs.  This Agreement supersedes all previous agreements made between PECU and Plaintiff.  Any agreements reached between PECU, Plaintiff, and any third party, are expressly excluded from this provision.

10.6     Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.7     Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.8     The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.9     The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.  No assignment of this Settlement Agreement will be valid without the other party's prior, written permission.

10.10     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the

31

jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.11    As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.12    All dollar amounts are in United States dollars (USD).

10.13    Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits.  All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until six (6) months after the Effective Date to request re-issuance by the Claims Administrator.

10.14    If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and PECU shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2.1 or any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.15    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed by their duly authorized attorneys.

4861-5497-7089.1

## AGREED TO BY:

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: */s/* ~~Gary M Klinger~~
Gary M. Klinger, Esq. (Admitted *PHV*)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
Address:  227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email:    gklinger@milberg.com

Joe Kendall, Esq.
Texas SBN: 11260700
Kendall Law Group PLLC
Address:  3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: (214) 744-3000
Facsimile:  (214) 744-3015
Email:    jkendall@kendalllawgroup.com


*Counsel for Plaintiff and the Putative Class*

**BAKER & HOSTETLER, LLP**

By: */s/*
Michelle R. Gomez, Esq.
Texas SBN: 24087598
Casie Collignon (Admitted *PHV*)
Address: 1801 California St., Suite 4400
Denver, CO 80202-2662
Telephone: 303.861.0600
Facsimile:  303.861.7805
E-mail:    ccollignon@bakerlaw.com

*Counsel for Defendant*
*Public Employees Credit Union*

33

**AGREED TO BY:**


**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**


By: */s/* _____
Gary M. Klinger, Esq. (Admitted *PHV*)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
Address:  227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email:    gklinger@milberg.com

Joe Kendall, Esq.
Texas SBN: 11260700
Kendall Law Group PLLC
Address:  3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone:  (214) 744-3000
Facsimile:  (214) 744-3015
Email:    jkendall@kendalllawgroup.com


*Counsel for Plaintiff and the Putative Class*


**BAKER & HOSTETLER, LLP**


By: */s/* _____
Michelle R. Gomez, Esq.
Texas SBN: 24087598
Casie Collignon (Admitted *PHV*)
Address: 1801 California St., Suite 4400
Denver, CO 80202-2662
Telephone: 303.861.0600
Facsimile:  303.861.7805
E-mail:    ccollignon@bakerlaw.com

*Counsel for Defendant*
*Public Employees Credit Union*

33

# **EXHIBIT A**

**A proposed Settlement has been reached in a class action lawsuit known as *Scott Boyd v. Public Employees Credit Union*, Case No. 1:22-cv-00825-LY ("Lawsuit"), filed in the United States District Court for the Western District of Texas, Austin Division.**

**What is this about?** This Lawsuit arises out of unauthorized access to Public Employees Credit Union's ("PECU") systems and certain files containing sensitive information about PECU's current and former customers including, but not limited to, names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), Social Security Numbers, and other types of personally identifiable information (collectively "PII"), which was discovered by PECU on or about April 26, 2022 (the "Data Incident"). PECU disagrees with Plaintiff's claims and denies any wrongdoing.

**Who is a Settlement Class Member?** You are a Settlement Class Member if you were mailed written notification that indicated your PII was potentially compromised as a result of the Data Incident discovered on or about April 26, 2022.

**What are the benefits?** The Settlement provides the following benefits:

• **Documented Out-of-pocket Expense Reimbursement**: Up to $500 for documented out-of-pocket expenses.

• **Lost Time Reimbursement**: Reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident ($20 per hour).

• **Documented Extraordinary Loss Reimbursement**: Reimbursement for extraordinary losses, not to exceed $2,500 per Settlement Class Member for documented monetary losses.

• **Credit Monitoring**: Settlement Class Members who previously enrolled in the credit monitoring product offered by PECU will have that term automatically extended for one (1) year. Settlement Class Members who did not previously enroll for credit monitoring shall have the ability to claim one (1) year of credit monitoring by the same service previously offered by PECU.

• **Information Security Improvements**: PECU will also provide various security enhancements. You must file a claim by [INSERT DATE] by mail or online at [INSERT WEBSITE] to recieve benefits from the Settlement.

**What are my other rights?**

• **Do Nothing**: If you do nothing, you remain in the Settlement. You give up your rights to sue but you will not get any money; you must submit a claim to get any money.

• **Exclude yourself**: You can get out of the Settlement and keep your right to sue about the claims in this Lawsuit, but you will not get any money from the Settlement. You must exclude yourself by [INSERT].

• **Object**: You can stay in the Settlement but tell the Court why you think the Settlement should not be approved. Objections must be submitted by [INSERT]. Detailed instructions on how to file a claim, get additional credit monitoring, exclude yourself, or object are on the Settlement Website below. The Court will hold the Final Fairness Hearing at [INSERT] to consider whether the proposed Settlement is fair, reasonable, and adequate, to consider Attorneys' Fees and Expenses of $190,000 and request a Class Representative service award of $1,500, and to consider whether and if it should be approved. You may attend the hearing, but you don't have to. This is only a summary. For additional information, including a copy of the Settlement Agreement, Class Counsel's Application for Attorneys' Fees and Expenses, and other documents, visit [INSERT WEBSITE] or call [INSERT PHONE #].

# **EXHIBIT B**

**NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT**

**If Public Employees Credit Union ("PECU") Notified You of a Data Incident, You May be Eligible For Benefits From a Class Action Settlement.**

*This is not a solicitation from a lawyer, junk mail, or an advertisement. A court authorized this Notice.*

- A proposed Settlement has been reached in a class action lawsuit known as *Scott Boyd v. Public Employees Credit Union,* Case No. 1:22-cv-00825-LY ("Lawsuit"), filed in the United States District Court for the Western District of Texas, Austin Division.

- This Lawsuit arises out of unauthorized access to PECU's systems and certain files containing sensitive information about PECU's current and former customers including, but not limited to, names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), Social Security Numbers, and other types of personally identifiable information (collectively "PII"), which was discovered by PECU on or about April 26, 2022 (the "Data Incident"). PECU disagrees with Plaintiff's claims and denies any wrongdoing.

- All Settlement Class Members can receive the following benefits from the Settlement: (1) up to $500 for documented out-of-pocket expenses, (2) reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident ($20 per hour), and (3) reimbursement for extraordinary losses up to $2,500 for documented expenses. PECU also agrees to provide various security related improvements.

- Settlement Class Members who previously enrolled in the credit monitoring product offered by PECU will have that term automatically extended for one (1) year. Settlement Class Members who did not previously enroll for credit monitoring shall have the ability to claim one (1) year of credit monitoring by the same service previously offered by PECU.

- You are included in this Settlement as a Settlement Class Member if you were mailed written notification that indicated your PII was potentially compromised as a result of the Data Incident discovered on or about April 26, 2022.

- Your legal rights are affected regardless of whether you do or do not act. Read this Notice carefully.

| YOUR LEGAL RIGHTS & OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim and/or Receive Credit Monitoring** | **You must submit a Valid Claim to get money from this Settlement.** Claim Forms must be submitted online by [INSERT] or, if mailed, postmarked no later than [INSERT]. **You do not have to submit a claim to get Credit Monitoring if you previously enrolled.** If you previously signed up for monitoring, your monitoring will be automatically extended for one (1) additional year. If you did not previously sign up for monitoring, you may enroll in the credit monitoring product previously offered by PECU, for a period of one year, by submitting a request through the Claim Form. |
| **Do Nothing** | If you do nothing, you remain in the Settlement. You give up your rights to sue and you will not get any money. |
| **Exclude Yourself** | **Get out of the Settlement. Get no money.  Keep your rights.** This is the only option that allows you to keep your right to sue about the claims in this lawsuit. You will not get any money from the Settlement. Your request to exclude yourself must be postmarked no later than [INSERT]. |
| **File an Objection** | Stay in the Settlement but tell the Court why you think the Settlement should not be approved. Objections must be postmarked no later than [INSERT]. |
| **Go to a Hearing** | You can ask to speak in Court about the fairness of the Settlement, at your own expense. *See* Question 18 for more details. The Final Fairness Hearing is scheduled for [INSERT]. |

## WHAT THIS NOTICE CONTAINS

**Basic Information**.................................................................................................**Pages 3-4**

    1.    How do I know if I am affected by the lawsuit and Settlement?
    2.    What is this case about?
    3.    Why is there a Settlement?
    4.    Why is this a class action?
    5.    How do I know if I am included in the Settlement?

**The Settlement Benefits**......................................................................................**Pages 4-5**

    6.    What does this Settlement provide?
    7.    How to submit a Claim?
    8.    What am I giving up as part of the Settlement?
    9.    Will the Class Representative receive compensation?

**Exclude Yourself**......................................................................................................**Page 6**

    10.   How do I exclude myself from the Settlement?
    11.   If I do not exclude myself, can I sue later?
    12.   What happens if I do nothing at all?

**The Lawyers Representing You**...............................................................................**Page 6**

    13.   Do I have a lawyer in the case?
    14.   How will the lawyers be paid?

**Objecting to the Settlement**....................................................................................**Page 7**

    15.   How do I tell the Court that I do not like the Settlement?
    16.   What is the difference between objecting and asking to be excluded?

**The Final Fairness Hearing**.....................................................................................**Page 8**

    17.   When and where will the Court decide whether to approve the Settlement?
    18.   Do I have to come to the hearing?
    19.   May I speak at the hearing?

**Do Nothing**................................................................................................................**Page 8**

    20.   What happens if I do nothing?

**Get More Information**...............................................................................................**Page 8**

    21.   How do I get more information about the Settlement?

BASIC INFORMATION

## 1. How do I know if I am affected by the Lawsuit and Settlement?

You are a Settlement Class Member if you were mailed written notification from Public Employees Credit Union that your PII was potentially impacted as a result of the Data Incident that occurred on or about April 26, 2022.

The Settlement Class specifically excludes: (i) Public Employees Credit Union ("PECU"), the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. This Notice explains the nature of the lawsuit and claims being settled, your legal rights, and the benefits to the Settlement Class.

## 2. What is this case about?

This case is known as *Scott Boyd v. Public Employees Credit Union,* Case No. 1:22-cv-00825-LY, filed in the United States District Court for the Western District of Texas, Austin Division. The person who sued is called the "Plaintiff" and the company they sued, PECU, is known as the "Defendant" in this case. PECU will be called "Defendant" in this Notice.

Plaintiff filed a lawsuit against Defendant, individually, and on behalf of anyone whose personally identifiable information ("PII") was potentially impacted as a result of the Data Incident.

This Lawsuit arises out of unauthorized access to PECU's systems and certain files containing sensitive information about PECU's current and former customers including, but not limited to, names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), Social Security Numbers, and other types of personally identifiable information (collectively "PII"), which was discovered by PECU on or about April 26, 2022 (the "Data Incident"). PECU denies any wrongdoing. After learning of the Data Incident, notification was mailed to persons whose PII may have been impacted by the Data Incident. Subsequently, this lawsuit was filed asserting claims against PECU relating to the Data Incident.

## 3. Why is there a Settlement?

By agreeing to settle, both sides avoid the cost, disruption, and distraction of further litigation. The Class Representative, Defendant, and their attorneys believe the proposed Settlement is fair, reasonable, and adequate and, thus, best for the Settlement Class Members. The Court did not decide in favor of the Plaintiff or Defendant. Full details about the proposed Settlement are found in the Settlement Agreement available at [INSERT].

## 4. Why is this a class action?

In a class action, one or more people called a "Class Representative" sue on behalf of all people who have similar claims.  All of these people together are the "Settlement Class" or "Settlement Class Members."

## 5. How do I know if I am included in the Settlement?

You are included in the Settlement if you were mailed written notification that indicated your PII was potentially compromised as a result of the Data Incident discovered by PECU on or about April 26, 2022.

If you are not sure whether you are included as a Settlement Class Member, or have any other questions about the Settlement, visit [INSERT], call toll free [INSERT], or write to [INSERT].

**THE SETTLEMENT BENEFITS**

| 6. **What does this Settlement provide?** |
| --- |

The proposed Settlement will provide the following benefits to Settlement Class Members:

**Expense Reimbursement**

**Documented Out of Pocket Expense Reimbursement (Ordinary Losses):** All Settlement Class Members who submit a Valid Claim using the Claim Form are eligible for the following documented out-of-pocket expenses, not to exceed $500 per Settlement Class Member, that were incurred as a result of the Data Incident: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (if charged by the minute); (iv) data charges (if charged based on the amount of data used); (v) postage; (vi) gasoline for local travel; and (vii) fees for credit reports, credit monitoring, or other identity theft insurance products purchased by Settlement Class Members between April 26, 2022 and the Claims Deadline. To receive reimbursement for any of the above-referenced out-of-pocket expenses, Settlement Class Members must submit a valid and timely claim, including necessary supporting documentation, to the Claims Administrator.

**Lost Time Reimbursement:** Settlement Class Members are also eligible to receive reimbursement for up to three (3) hours of lost time spent dealing with the Data Incident (calculated at the rate of $20 per hour), but only if at least one (1) full hour was spent. Settlement Class Members may receive reimbursement for lost time if the Settlement Class Member (i) attests that any claimed lost time was spent responding to issues raised by the Data Incident; and (ii) provides a written description of how the claimed lost time was spent related to the Data Incident. Claims made for lost time can be combined with reimbursement for out-of-pocket expenses and are subject to the same $500 cap for all Settlement Class Members.

**Documented Extraordinary Loss Reimbursement:** Settlement Class Members are also eligible to receive reimbursement for extraordinary losses, not to exceed $2,500 per Settlement Class Member for documented monetary loss that: (i) is actual, documented, and unreimbursed; (ii) was more likely than not caused by the Data Incident; (iii) occurred between April 26, 2022 and the Claims Deadline; and (iv) is not already covered by any of the above-referenced documented out-of-pocket expenses or lost time reimbursement categories. Settlement Class Members must also provide documentation that he or she made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

**Credit Monitoring**: If you previously signed up for monitoring offered by PECU, your monitoring will be automatically extended for one (1) additional year. If you did not previously sign up for monitoring, you may do so before the Claims Deadline on [INSERT] by selecting the credit monitoring option on the Claim Form.

**Information Security Improvements:** PECU will implement and keep in place various security-related improvements through December 31, 2023. Costs associated with these security improvements will be paid by PECU separate and apart from other settlement benefits.

| 7. **How to submit a claim?** |
| --- |

All claims will be reviewed by the Claims Administrator and/or a claims referee. You must file a Claim Form to get any money from the proposed Settlement. Claim Forms must be submitted online by [INSERT] or postmarked no later than [INSERT]. You can download a Claim Form at [INSERT] or you can call the Claims Administrator at [INSERT].

**8.   What am I giving up as part of the Settlement?**

If you stay in the Settlement Class, you will be eligible to receive benefits, but you will not be able to sue PECU and its Related Entities and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers regarding the claims in this case. The Settlement Agreement, which includes all provisions about settled claims, releases, and Released Persons, is available at [INSERT WEBSITE]

The only way to keep the right to sue is to exclude yourself (*see* Question 10), otherwise you will be included in the Settlement Class, if the Settlement is approved, and you give up the right to sue for the claims in this case.

**9.   Will the Class Representative receive compensation?**

Yes. The Class Representative will receive a service award of up to $1,500, to compensate him for his services and efforts in bringing the lawsuit. The Court will make the final decision as to the amount, if any, to be paid to the Class Representative.

EXCLUDE YOURSELF

**10. How do I exclude myself from the Settlement?**

If you do not want to be included in the Settlement, you must send a timely written request for exclusion. Your request for exclusion must be individually signed by you. Your request must clearly manifest your intent to be excluded from the Settlement.

Your written request for exclusion must be postmarked no later than **[INSERT]** to:

[INSERT MAILING ADDRESS]

Instructions on how to submit a request for exclusion are available at [INSERT WEBSITE] or from the Claims Administrator by calling [INSERT PHONE #].

If you exclude yourself, you will not be able to receive any cash benefits from the Settlement and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit and you will keep your right to sue the Defendant on your own for the claims that this Settlement resolves.

**11. If I do not exclude myself, can I sue later?**

No. If you do not exclude yourself from the Settlement, and the Settlement is approved by the Court, you forever give up the right to sue the Released Persons (listed in Question 8) for the claims this Settlement resolves.

**12. What happens if I do nothing at all?**

4861-5668-1537.1

If you do nothing, you will be bound by the Settlement if the Court approves it, you will not get any money from the Settlement, you will not be able to start or proceed with a lawsuit, or be part of any other lawsuit against the Released Persons (listed in Question 8) about the settled claims in this case at any time.

## THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in the case?

Yes. The Court has appointed Gary M. Klinger of MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC (called "Class Counsel") to represent the interests of all Settlement Class Members in this case. You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14. How will the lawyers be paid?

Class Counsel will apply to the Court for an award of attorneys' fees and litigation expenses in an amount not to exceed $190,000. A copy of Class Counsel's Application for Attorneys' Fees and Expenses will be posted on the Settlement Website, [INSERT WEBSITE], before the Final Fairness Hearing.  The Court will make the final decisions as to the amounts to be paid to Class Counsel, and may award less than the amount requested by Class Counsel.

## OBJECTING TO THE SETTLEMENT

### 15. How do I tell the Court that I do not like the Settlement?

If you want to tell the Court that you do not agree with the proposed Settlement or some part of it, you can submit an objection telling it why you do not think the Settlement should be approved. Objections must be submitted in writing and include all the following information:

Such notice shall state:
  (i)      the objector's full name, address, telephone number, and e-mail address (if any);
  (ii)     information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident);
  (iii)    a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable;
  (iv)     the identity of any and all counsel representing the objector in connection with the objection;
  (v)      a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing;
  (vi)     the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and
  (vii)    a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.

Your Objection must include the case name and docket number, *Scott Boyd v. Public Employees Credit Union,* Case No. 1:22-cv-00825-LY (the "PECU Action"), and be submitted to the Clerk of the Court by First-Class mail, received no later than [INSERT DATE], to:

[INSERT COURT CLERK INFORMATION]

In addition, you must mail a copy of your objection to Class Counsel and Defense Counsel, postmarked no later than [INSERT DATE]:

| CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|
| Gary M. Klinger, Esq.<br>MILBERG COLEMAN BRYSON<br>PHILLIPS GROSSMAN PLLC<br>227 W. Monroe Street<br>Suite 2100<br>Chicago, IL 60606 | Michelle R. Gomez<br>Casie D. Collignon<br>Baker & Hostetler, LLP<br>1801 California St.<br>Suite 4400<br>Denver, CO 80202 |

If you do not submit your objection with all requirements, or if your objection is not received by [INSERT DATE], you will be considered to have waived all Objections and will not be entitled to speak at the Final Fairness Hearing.

### 16. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

THE FINAL FAIRNESS HEARING

### 17. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Fairness Hearing at [INSERT DATE, TIME, LOCATION]. The hearing may be moved to a different date, time, or location without additional notice, so it is recommended that you periodically check [INSERT WEBSITE] for updated information.

At the hearing, the Court will consider whether the proposed Settlement is fair, reasonable, adequate, and is in the best interests of Settlement Class Members, and if it should be approved. If there are valid objections, the Court will consider them and will listen to people who have asked to speak at the hearing if the request was made properly. The Court will also consider the award of Attorneys' Fees and Expenses to Class Counsel and the request for a service award to the Class Representative.

### 18. Do I have to come to the hearing?

No. You are not required to come to the Final Fairness Hearing. However, you are welcome to attend the hearing at your own expense.

If you submit an Objection, you do not have to come to the hearing to talk about it. If your objection was submitted properly and on time, the Court will consider it. You also may pay your own lawyer to attend the Final Fairness Hearing, but that is not necessary.

### 19. May I speak at the hearing?

4861-5668-1537.1

Yes. You can speak at the Final Fairness Hearing but you must ask the Court for permission.  To request permission to speak, you must file an objection according to the instructions in Question 15, including all the information required.  You cannot speak at the hearing if you exclude yourself from the Settlement.

## DO NOTHING

**20. What happens if I do nothing?**

If you do nothing, you will not get any money from the Settlement, you will not be able to sue for the claims in this case, and you release the claims against Defendant described in Question 8.

## GET MORE INFORMATION

**21. How do I get more information about the Settlement?**

This is only a summary of the proposed Settlement.  If you want additional information about this lawsuit, including a copy of the Settlement Agreement, the Complaint, the Court's Preliminary Approval Order, Class Counsel's Application for Attorneys' Fees and Expenses, and more, please visit [INSERT WEBSITE] or call [INSERT PHONE].  You may also contact the  Claims Administrator at [INSERT MAILING ADDRESS].

**PLEASE DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT
OR LITIGATION TO THE CLERK OF THE COURT, THE JUDGE, DEFENDANT, OR
DEFENDANT'S COUNSEL.**

4861-5668-1537.1

# **EXHIBIT C**

## CLAIM FORM

This lawsuit arises out of a data security incident where an unauthorized third-party gained access to PECU's systems and accessed certain files containing sensitive information about PECU's current and former customers that was discovered by Public Employees Credit Union ("PECU") on or about April 26, 2022 (the "Data Incident"). The information that may have been accessed in the Data Incident includes, but is not limited to, names, addresses, email addresses, telephone numbers, dates of birth, financial account information (e.g. account numbers, credit, and or debit cards), Social Security numbers, and other types of personally identifiable information (collectively "PII"), or any other information leading to notification regarding the Data Incident. PECU disagrees with Plaintiff's claims in the lawsuit and denies any wrongdoing.

This Claim Form should be filled out online or submitted by mail if you had documented out-of-pocket expenses, fraudulent charges, lost time spent dealing with the Data Incident, or documented, unreimbursed extraordinary monetary losses as a result of the Data Incident. Checks will be mailed, or electronic payments will be made, to eligible Settlement Class Members if the Settlement is approved by the Court.

The Settlement Notice describes your legal rights and options.  Please visit the official settlement administration website, [INSERT WEBSITE], or call [INSERT PHONE #] for more information.

Claim submission options:

- File a claim online at [INSERT WEBSITE].  Your form must be submitted by [INSERT DATE & TIME].
- Print this form, complete the form in its entirety, and mail to the Claims Administrator at the address listed below.  Your Claim Form must be postmarked by [INSERT DATE].
- You can contact the Claims Administrator to request a Claim Form be mailed to you.  You must complete the Claim Form in its entirety and then mail the completed Claim Form so that it is postmarked by [INSERT DATE].

YOU MUST INCLUDE YOUR CLASS MEMBER ID in Section 1 below.  You can locate your Class Member ID at the top of the postcard Notice that was sent to you.

### 1. CLASS MEMBER INFORMATION.

Class Member ID:   ___  ___  ___  ___  ___  ___  ___  ___

Name *(REQUIRED)*: _____  ___  _____

                        First Name                      Mi   Last Name

_____

*Number and Street Address (REQUIRED)*

_____  ___ ___    ___ ___ ___ ___ ___ ___-___ ___ ___ ___

*City (REQUIRED)*                            *State (REQUIRED)*             *Zip Code (REQUIRED)*

Telephone Number *(REQUIRED):* ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Email Address (optional): _____@_____._____

### 2. PAYMENT ELIGIBILITY INFORMATION.

Please review the Notice and sections 2.1 through 2.2 of the Settlement Agreement (available at [INSERT WEBSITE]) for more information on who is eligible for a payment and the nature of the expenses or losses that can be claimed.

Please provide as much information as you can to help us figure out if you are entitled to a Settlement payment.

PLEASE PROVIDE THE INFORMATION LISTED BELOW:

Check the box for each category of documented out-of-pocket expenses, fraudulent charges, or lost time that you incurred between April 26, 2022 and the ==Claims Deadline== as a result of the Data Incident.  Please be sure to fill in the total amount you are claiming for each category and to attach documentation of the charges as described in **bold type** (if you are asked to provide account statements as part of proof required for any part of your claim, you may mark out any unrelated transactions if you wish).

**Documented Expense Reimbursement Resulting from the Data Incident**: (not to exceed $500 per Settlement Class Member)

☐   Unreimbursed fees or other charges from your bank due to fraudulent activity on your card.

      Examples - Overdraft fees, over-the-limit fees, late fees, or charges due to insufficient funds or interest.

Total amount claimed for this category $_____

      ☐   ***I have attached a copy of a bank or credit card statement or other proof of the fees or charges.***

(You may mark out any transactions that were not fraudulent and any other information that is not relevant to your claim before sending in the documentation.)

**Date reported** _____

**Description of the person(s) and/or companies to whom you reported the fraud:**

_____

_____

_____

☐   Other incidental telephone, internet, postage, or gasoline (for local travel only) expenses directly related to the Data Incident.

      Examples - Long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used)

Total amount claimed for this category $_____

      ☐***I have attached a copy of the bill from my telephone or mobile phone company or internet service provider, postage provider, or gasoline provider that shows the charges, receipts, or other proof or purchase of the fees or charges.***

(You may mark out any transactions that were not fraudulent and any other information that is not relevant to your claim before sending in the documentation.)

☐   Credit reports, identity theft insurance, or credit monitoring charges.

      Examples - The cost of a credit report, identity theft insurance, or credit monitoring services that you purchased between April 26, 2022 and the ==Claims Deadline==.

Total amount claimed for this category $_____

☐ ***I have attached a copy of a receipt or other proof of purchase for each credit report or product purchased.***

(You may mark out any transactions that were not fraudulent and any other information that is not relevant to your claim before sending in the documentation.)

☐ Between one (1) and three (3) hours of time spent dealing with the Data Incident (which will be calculated and paid at a rate of $20 per hour). You must attest that any claimed lost time was spent responding to issues raised by the Data Incident and provide a written description of how the claimed lost time was spent related to the Data Incident.

Examples – You spent at least one (1) full hour calling customer service lines, writing letters or emails, or on the Internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed. Please note that the time that it takes to fill out this Claim Form is not reimbursable and should not be included in the total.

Total number of hours claimed _____

***In order to receive this payment, you <u>must</u> describe what you did and how the claimed lost time was spent related to the Data Incident.***

Check all activities, below, which apply.

☐ Calling bank/credit card customer service lines regarding fraudulent transactions.

☐ Writing letters or e-mails to banks/credit card companies in order to have fraudulent transactions reversed.

☐ Time on the internet verifying fraudulent transactions.

☐ Time on the internet updating automatic payment programs due to new card issuance.

☐ Calling credit reporting bureaus regarding fraudulent transactions and/or credit monitoring.

☐ Writing letters or e-mails to credit reporting bureaus regarding correction of credit reports.

☐ Other. Provide description(s) here:

_____

_____

_____

_____

**<u>Documented Extraordinary Loss Reimbursement</u>**. If you wish to receive reimbursement of actual, documented, and unreimbursed losses (up to $2,500) that were more likely than not caused by the Data Incident, occurred between April 26, 2022 and the Claims Deadline, and not already covered by one or more of the other categories of Settlement benefits, describe the unreimbursed losses claimed (including the amount of each loss), sign the attestation at the end of this Claim Form, and attach supporting documentation (if you provide account statements as part of proof required for any part of your claim, you may mark out any unrelated transactions if you wish). By signing the attestation below, you are affirming that to the best of your knowledge and belief the claimed loses were more likely than not caused by the Data Incident.

Describe all actual, documented, and unreimbursed losses (including the amount of each loss and the total amount claimed) that were more likely than not caused by the Data Incident.

| Description of Loss | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
| **TOTAL Amount Being Claimed:** |  |

☐    *I have attached documentation showing that the claimed loses were more likely than not caused by the Data Incident.*

☐    **Check this box to confirm that you have exhausted all applicable insurance policies, including credit monitoring insurance and identity theft insurance, and that you have no insurance coverage for these fraudulent charges.**

## Credit Monitoring

All Settlement Class Members who previously enrolled in the credit monitoring service previously offered by PECU shall have the term of their credit monitoring automatically extended by one (1) year. All Settlement Class Members who did not previously enroll in the credit monitoring product offered by PECU are eligible to claim one (1) year of credit monitoring services under the same service previously offered by PECU.

If you did not previously enroll in the credit monitoring services offered by PECU, do you wish to sign up now?

☐    Yes, I want to sign up to receive free Credit Monitoring, and my email address is as follows:

Email Address: _____

If you select "YES" for this option, you will need to follow instructions and use an activation code that you receive after the Settlement is final. Credit Monitoring Protections will not begin until you use your activation code to enroll. Activation instructions will be provided to your email address. If you do not have an email address, your activation code and instructions will be sent to your home address listed on this Claim Form.

**3. SIGN AND DATE YOUR CLAIM FORM.**

I declare under the laws of the United States and my state of residence that the information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

I understand that I may be asked to provide supplemental information by the Claims Administrator or Claims Referee before my claim will be considered complete and valid.

_____    _____    _____ / ____ ____ / ____ _____ ____
*Signature*                                          *Print Name*                                   *Month/Day/Year (mm/dd/yyyy)*

**4. MAIL YOUR CLAIM FORM.**

This Claim Form and all supporting documentation must be either submitted online at **[INSERT WEBSITE]** or postmarked by **[INSERT DATE]** and mailed to:

[INSERT MAILING ADDRESS]

# **<u>EXHIBIT D</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SCOTT BOYD, *on behalf of himself and all others similarly situated,* | ) ) ) | Case No. 1:22-cv-00825-LY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PUBLIC EMPLOYEES CREDIT UNION, | ) ) ) | |
| Defendant. | ) ) | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**

Before the Court is Plaintiff Scott Boyd's ("Plaintiff") Unopposed Motion for Preliminary

Approval of Class Action Settlement **(Doc. No. __)** (the "Motion"), the terms of which are set

forth in a Settlement Agreement between Plaintiff and Defendant Public Employees Credit Union

("PECU," and, together with Plaintiff, the "Parties"), with accompanying exhibits attached as

**Exhibit 1** to Plaintiff's Memorandum of Law in Support of his Motion (the "Settlement

Agreement").[1]

Having fully considered the issue, the Court hereby **GRANTS** the Motion and **ORDERS**

as follows:

1. **Class Certification for Settlement Purposes Only**. The Settlement Agreement

provides for a Settlement Class defined as follows:

---

[1] All defined terms in this Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") have the same meaning as set forth in the Settlement Agreement, unless otherwise indicated.

All persons who were sent written notification by Public Employees Credit Union ("PECU") that their PII was potentially compromised as a result of the unauthorized access to PECU's network that PECU discovered on or about April 26, 2022 (the "Data Incident").

Specifically excluded from the Settlement Class are:

(i) PECU, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

Pursuant to Federal Rules of Civil Procedure 23(e)(1), the Court finds that giving notice is justified. The Court finds that it will likely be able to approve the proposed Settlement as fair, reasonable, and adequate. The Court also finds that it will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Specifically, the Court finds for settlement purposes that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact that are common to the Settlement Class; (c) the claims of the Class Representative are typical of and arise from the same operative facts and the Class Representative seeks similar relief as the claims of the Settlement Class Members; (d) the Class Representative will fairly and adequately protect the interests of the Settlement Class as the Class Representative has no interests antagonistic to or in conflict with the Settlement Class and has retained experienced and competent counsel to prosecute this Litigation on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this Litigation.

2.    **Settlement Class Representatives and Settlement Class Counsel**. The Court finds that Plaintiff Scott Boyd will likely satisfy the requirements of Rule 23(e)(2)(A) and

2

should be appointed as the Class Representative. Additionally, the Court finds that Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as Class Counsel pursuant to Rule 23(g)(1).

3.  **Preliminary Settlement Approval.** Upon preliminary review, the Court finds the Settlement is fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class and accordingly is preliminarily approved. In making this determination, the Court has considered the monetary and non-monetary benefits provided to the Settlement Class through the Settlement, the specific risks faced by the Settlement Class in prevailing on their claims, the good faith, arms' length negotiations between the Parties and absence of any collusion in the Settlement, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, the Settlement treats the Settlement Class Members equitably, and all of the other factors required by Rule 23 and relevant case law.

4.  **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

5.  **Final Approval Hearing**. A Final Approval Hearing shall be held on _____, 202___, at the United States District Court, Western District of Texas, Austin Division, 501 West 5th Street, Courtroom _____, Austin, Texas 78701 [or via telephone or videoconference], where the Court will determine, among other things, whether: (a) this Litigation should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) the Settlement should be approved as fair, reasonable, and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) this Litigation should be dismissed with

3

prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members (who have not timely and validly excluded themselves from the Settlement) should be bound by the releases set forth in the Settlement Agreement; (e) the application of Class Counsel for an award of Attorneys' Fees, Costs, and Expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (f) the application of the Class Representative for a Service Award should be approved.

6.      **Claims Administrator**. The Court appoints Kroll Settlement Administration LLC as the Claims Administrator, with responsibility for class notice and settlement administration. The Claims Administrator is directed to perform all tasks the Settlement Agreement requires. The Claims Administrator's fees will be paid pursuant to the terms of the Settlement Agreement.

7.      **Notice**. The proposed notice program set forth in the Settlement Agreement and the Notices and Claim Form attached to the Settlement Agreement as **Exhibits A, B, and C** are hereby approved. Non-material modifications to these Exhibits may be made by the Claims Administrator in consultation and agreement with the Parties, but without further order of the Court.

8.      **Findings Concerning Notice**. The Court finds that the proposed form, content, and method of giving Notice to the Settlement Class as described in the Notice program and the Settlement Agreement and its exhibits: (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation, the terms of the proposed Settlement, and their rights under the proposed Settlement, including, but not limited to, their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c); and (e) and meet the

requirements of the Due Process Clause(s) of the United States and Texas Constitutions. The Court further finds that the Notice provided for in the Settlement Agreement is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

The Claims Administrator is directed to carry out the Notice program in conformance with the Settlement Agreement.

9.      **Class Action Fairness Act Notice**. Within ten (10) days after the filing of this Settlement Agreement with the Court, the Claims Administrator acting on behalf of PECU shall have served or caused to be served a notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

10.     **Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator in the manner provided in the Notice. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class. To be effective, such requests for exclusion must be postmarked no later than the Opt-Out Date, which is no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d) in the Settlement Agreement, and as stated in the Notice.

In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than one hundred (100) timely and valid Opt-Outs (exclusions) submitted, PECU may, by notifying Class Counsel and the Court in writing, void the Settlement Agreement. If PECU voids the Settlement Agreement, PECU will be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and the

Service Award to the Class Representative and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Class Counsel and to PECU's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

If a Final Order and Judgment is entered, all Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Final Order and Judgment. All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any cash benefits of and/or be bound by the terms of the Settlement Agreement.

11.    **Objections and Appearances**. A Settlement Class Member (who does not submit a timely written request for exclusion) desiring to object to the Settlement Agreement may submit a timely written notice of his or her objection by the Objection Date and as stated in the Notice. The Long Notice shall instruct Settlement Class Members who wish to object to the Settlement Agreement to file their objections with the Court and to mail copies to Class Counsel and PECU's counsel. The Notice shall advise Settlement Class Members of the deadline for submission of any objections—the "Objection Date." Any such notices of an intent to object to the Settlement Agreement must be written and must include all of the following: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the

6

objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.

To be timely, written notice of an objection in the appropriate form must contain the case name and docket number *Boyd v. Public Employees Credit Union,* Case No. 1:22-CV-00825-LY (the "*PECU* Action"), and must be filed with the Clerk of Court by the Objection Date, which is no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d) in the Settlement Agreement, and served concurrently therewith upon Class Counsel and PECU's Counsel, postmarked by the Objection Date, established by this Preliminary Approval Order and as stated in the Notice.

Any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The provisions stated ¶ 5.1 of the Settlement Agreement be the exclusive means for any challenge to the Settlement Agreement. Any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Final Order and Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

12.    **Claims Process**. Settlement Class Counsel and PECU have created a process for Settlement Class Members to claim benefits under the Settlement. The Court preliminarily

approves this process and directs the Claims Administrator to make the Claim Form or its substantial equivalent available to Settlement Class Members in the manner specified in the Notice.

The Claims Administrator will be responsible for effectuating the claims process.

Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirement and procedures specified in the Notice and the Claim Form. If the Final Order and Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Final Order and Judgment, including the releases contained therein.

13.     **Termination of Settlement**. This Preliminary Approval Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing before the Court entered this Preliminary Approval Order and before they entered the Settlement Agreement, if: (a) the Court does not enter this Preliminary Approval Order; (b) Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement; or (c) there is no Effective Date. In such event, (i) the Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

8

14.    **Use of Order**. This Preliminary Approval Order shall be of no force or effect if the Final Order and Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability. Nor shall this Preliminary Approval Order be construed or used as an admission, concession, or declaration by or against the Class Representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claims they may have in this Litigation or in any other lawsuit.

15.    **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Fairness Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement Website maintained by the Claims Administrator. The Court may approve the Settlement, with such modifications as may be agreed upon by the Parties, if appropriate, without further notice to the Settlement Class.

16.    **Stay of Litigation.** All proceedings in the Litigation, other than those related to approval of the Settlement Agreement, are hereby stayed. Further, any actions brought by Settlement Class Members concerning the Released Claims are hereby enjoined and stayed pending Final Approval of the Settlement Agreement.

17.    **Schedule and Deadlines**. The Court orders the following schedule of dates for the specified actions/further proceedings:

4885-4067-2324.2

| Event | Deadline |
|---|---|
| Defendant Will Serve Or Cause To Be Served CAFA Notice, Per 28 U.S.C. § 1715(b) | No Later Than 10 Days After Settlement Agreement Is Filed With Court |
| Defendant Provides Class Member Information To Claims Administrator | Within 14 Days Of Entry Of Preliminary Approval Order |
| Deadline For Claims Administrator To Begin Sending Short Form Notice (By First Class USPS Mail) | Within Forty-Five (45) Days Of Entry Of Preliminary Approval Order (the "Notice Commencement Date") |
| Motion for Attorneys' Fees, Costs, Expenses, and Service Award to Be Filed by Settlement Class Counsel | At Least 14 Days Prior To Opt-Out/ Objection Dates |
| Opt-Out/Objection Date Deadlines | 60 Days After Notice Commencement Date |
| Claims Administrator Provides Parties With List Of Timely, Valid Opt-Outs | 7 Days After Opt-Out Dates |
| Claims Deadline | 90 Days After Notice Commencement Date |
| Motion For Final Approval To Be Filed By Class Counsel | At Least 14 Days Prior To Final Approval Hearing |
| Final Approval Hearing | [COURT TO ENTER DATE AND TIME] No Earlier Than 120 Days After Entry Of Preliminary Approval Order |

**DONE AND ORDERED** in Austin, Texas on this ___ day of _____, 202__.

_____    _____
HONORABLE LEE YEAKEL
UNITED STATES DISTRICT COURT JUDGE

4885-4067-2324.2

# **EXHIBIT E**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| SCOTT BOYD, *on behalf of himself and all others similarly situated,* | ) ) ) | Case No. 1:22-cv-00825-LY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PUBLIC EMPLOYEES CREDIT UNION, | ) ) ) | |
| Defendant. | ) ) | |

**[PROPOSED] ORDER AND JUDGMENT GRANTING FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT**

Before the Court is Plaintiff Scott Boyd and Defendant Public Employees Credit Union ("PECU," and, together with Plaintiff, the "Parties") Unopposed Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"). The Motion seeks approval of the Settlement as fair, reasonable, and adequate. Also before the Court is Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses to Class Counsel, and Service Award to Plaintiff ("Motion for Attorneys' Fees").

Having reviewed and considered the Settlement Agreement, Motion for Final Approval, and Motion for Attorneys' Fees, and having conducted a Final Fairness Hearing, the Court makes the findings and grants the relief set forth below approving the Settlement upon the terms and conditions set forth in this Order.

**WHEREAS**, on _____[DATE], the Court entered an Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") **(Doc. No. __)** which, among other things: (a) conditionally certified this matter as a class action, including defining the class and class claims, (b) appointed Plaintiff as the Class Representative and

appointed Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel; (c) preliminarily approved the Settlement Agreement; (d) approved the form and manner of Notice to the Settlement Class; (d) set deadlines for opt-outs and objections; (e) approved and appointed the Claims Administrator; and (f) set the date for the Final Fairness Hearing;

WHEREAS, on _____[DATE], pursuant to the Notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed Settlement Agreement, of the right of Settlement Class Members to opt-out, and the right of Settlement Class Members to object to the Settlement Agreement and to be heard at a Final Fairness Hearing;

WHEREAS, on _____[DATE], the Court held a Final Approval Hearing to determine, *inter alia*: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether judgment should be entered dismissing this action with prejudice. Prior to the Final Fairness Hearing, a declaration of compliance with the provisions of the Settlement Agreement and Preliminary Approval Order relating to notice was filed with the Court as required by the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Fairness Hearing in support of or in opposition to the proposed Settlement Agreement, the award of attorneys' fees, costs, and expenses to Class Counsel, and the payment of a Service Award to the Class Representative;

WHEREAS, the Court not being required to conduct a trial on the merits of the case or determine with certainty the factual and legal issues in dispute when determining whether to approve a proposed class action settlement; and

2

**WHEREAS**, the Court being required under Federal Rule of Civil Procedure 23(e) to make the findings and conclusions hereinafter set forth for the limited purpose of determining whether the settlement should be approved as being fair, reasonable, adequate and in the best interests of the Settlement Class;

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order, having heard the presentation of Class Counsel and counsel for PECU, having reviewed all of the submissions presented with respect to the proposed Settlement Agreement, having determined that the Settlement Agreement is fair, adequate, and reasonable, having considered the application made by Settlement Class Counsel for attorneys' fees, costs, and expenses, and the application for a Service Award to the Representative Plaintiff, and having reviewed the materials in support thereof, and good cause appearing:

**IT IS ORDERED** that:

1.      The Court has jurisdiction over the subject matter of this action and over all claims raised therein and all Parties thereto, including the Settlement Class.

2.      The Settlement involves allegations in Plaintiff's Class Action Complaint against PECU for failure to implement or maintain adequate data security measures and safeguards to protect the sensitive information, which Plaintiff alleges directly and proximately caused injuries to Plaintiff and Settlement Class Members.

3.      The Settlement does not constitute an admission of liability by PECU, and the Court expressly does not make any finding of liability or wrongdoing by PECU.

4.     Unless otherwise indicated, words spelled in this Order and Judgment Granting Final Approval of Class Action Settlement ("Final Order and Judgment") with initial capital letters have the same meaning as set forth in the Settlement Agreement.

5.     The Court, having reviewed the terms of the Settlement Agreement submitted by the Parties pursuant to Federal Rule of Civil Procedure 23(e)(2), grants final approval of the Settlement Agreement and for purposes of the Settlement Agreement and this Final Order and Judgment only, the Court hereby finally certifies the following Settlement Class:

> All persons who were sent written notification by Public Employees Credit Union ("PECU") that their PII was potentially compromised as a result of the unauthorized access to PECU's network that PECU discovered on or about April 26, 2022 (the "Data Incident").

Specifically excluded from the Settlement Class are:

> (i) PECU, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

6.     The Settlement was entered into in good faith following arm's length negotiations and is non-collusive. The Settlement is in the best interests of the Settlement Class and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays, and uncertainties, including as to the outcome, including on appeal, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the settlement reflected in the Settlement Agreement.

7.    The Settlement Agreement provides, in part, and subject to a more detailed description of the settlement terms in the Settlement Agreement, for:

      a.    PECU to institute Claims Administration as outlined in the Settlement Agreement whereby Settlement Class Members can submit claims that will be evaluated by a Claims Administrator and/or Claims Referee mutually agreed upon by Class Counsel and PECU.

      b.    PECU to pay all costs of Claims Administration, including the cost of the Claims Administrator, instituting Notice, processing and administering claims, and preparing and mailing checks.

      c.    PECU to pay, subject to the approval and award of the Court, the reasonable attorneys' fees, costs, and expenses of Class Counsel and a Service Award to the Class Representative.

The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of Federal Rule of Civil Procedure 23(a) and (b)(3) set forth in the Preliminary Approval Order and notes that because this certification of the Settlement Class is in connection with the Settlement Agreement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.

8.    The terms of the Settlement Agreement are fair, adequate, and reasonable and are hereby approved, adopted, and incorporated by the Court. Notice of the terms of the Settlement, the rights of Settlement Class Members under the Settlement, the Final Fairness Hearing, Plaintiff's application for attorneys' fees, costs, and expenses, and the Service Award payment to

the Class Representative have been provided to Settlement Class Members as directed by this Court's Orders, and proof of Notice has been filed with the Court.

9.    The Court finds that the notice program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law

10.    The Court finds that PECU has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

11.    As of the Opt-Out deadline, _____ potential Settlement Class Members have requested to be excluded from the Settlement. Their names are set forth in **<u>Exhibit A</u>** to this Final Order and Judgment. Those persons are not bound by the Settlement Agreement and this Final Order and Judgment and shall not be entitled to any of the benefits afforded to the Settlement Class Members under the Settlement Agreement, as set forth in the Settlement Agreement.

12.    _____ objections were filed by Settlement Class Members.  The Court has considered all objections and finds the objections do not counsel against Settlement Agreement approval, and the objections are hereby overruled in all respects.

13.    All Settlement Class Members who have not objected to the Settlement Agreement in the manner provided in the Settlement Agreement are deemed to have waived any objections by appeal, collateral attack, or otherwise.

14.     The Court has considered all the documents filed in support of the Settlement, and has fully considered all matters raised, all exhibits and affidavits filed, all evidence received at the Final Fairness Hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court.

15.     The Parties, their respective attorneys, and the Claims Administrator are hereby directed to consummate the Settlement in accordance with this Final Order and Judgment and the terms of the Settlement Agreement.

16.     Pursuant to the Settlement Agreement, PECU, the Claims Administrator, and Class Counsel shall implement the Settlement in the manner and timeframe as set forth therein.

17.     Within the time period set forth in the Settlement Agreement, the relief provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim Forms, pursuant to the terms and conditions of the Settlement Agreement.

18.     Pursuant to and as further described in the Settlement Agreement, Plaintiffs and the Settlement Class Members release claims as follows:

> Upon the Effective Date, each Settlement Class Member (who has not timely and validly excluded himself or herself from the Settlement), including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member (who has not timely and validly excluded himself or herself from the Settlement), including Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

> "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; violations of

any Texas and similar state consumer protection statutes including but not limited to the California Consumer Privacy Act and California Unfair Competition Law, negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.  Released Claims shall not include the right of any Settlement Class Member, Class Counsel, or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

"Related Entities" means Public Employees Credit Union ("PECU") and its respective past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of its and their respective predecessors, successors, directors, officers, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Action, including covered entities associated with facts arising out of the Data Breach, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Breach or who pleads *nolo contendere* to any such charge.

"Released Persons" means PECU and the Related Entities.

"Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiff intends to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 *et seq*., Montana Code Ann. § 28-1-1602; North Dakota

Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Plaintiff, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

19.     Pursuant to and as further described in the Settlement Agreement, PECU releases

claims as follows:

Upon the Effective Date, PECU shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiff, each and all of the Settlement Class Members, Class Counsel and Plaintiff' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims. Any other claims or defenses PECU may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

20.     Neither PECU nor their Related Parties, shall have or shall be deemed to have

released, relinquished, or discharged any claim or defense against any Person other than Plaintiff,

each and all of the Settlement Class Members, Class Counsel and Plaintiff's Counsel. In addition,

none of the releases in the Settlement Agreement shall preclude any action to enforce the terms of

the Settlement Agreement by Plaintiff, Settlement Class Members, Class Counsel, and/or PECU.

21.    The Court grants final approval to the appointment of Plaintiff Scott Boyd as Class Representative. The Court concludes that Class Representative has  fairly and adequately represented the Settlement Class and will continue to do so.

22.    Pursuant to the Settlement Agreement, and in recognition of his efforts on behalf of the Settlement  Class,  the Court approves a payment to the Class Representative in the amount of $1,500.00 as a Service Award. PECU shall  make such payment in accordance with the terms of  the Settlement Agreement.

23.    The Court grants final approval to the appointment of Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel/ The Court concludes that Class Counsel has adequately represented the Settlement Class and will continue to do so.

24.    The Court, after careful review of the fee petition filed by Class Counsel, and after applying the appropriate standards required by relevant case law, hereby grants Class Counsel's application for combined attorneys' fees, costs, expenses in the amount of $190,000. Payment shall be made pursuant to the terms of the Settlement Agreement.

25.    This Final Order and Judgment and the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against PECU of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of PECU or of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the lawsuit. This Final Order and Judgment, the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the Settlement Agreement shall  not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or

wrongdoing of any nature or that Plaintiff, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement Agreement and this Final Order and Judgment may be filed in any action by PECU, Class Counsel, or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Order and Judgment (including, but not limited to, enforcing the releases contained herein). The Settlement Agreement and Final Order and Judgment shall not be construed or admissible as an admission by PECU that Plaintiff's claims or any similar claims are suitable for class treatment. The Settlement Agreement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Final Order and Judgment that are maintained by, or on behalf of, any Settlement Class Member or any other person subject to the provisions of this Final Order and Judgment.

26.     If the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Order and Judgment and the Preliminary Approval Order shall be deemed vacated, and shall have no force and effect whatsoever; the Settlement Agreement shall be considered null and void; all of the Parties' obligations under the Settlement Agreement, the Preliminary Approval Order, and this Final Order and Judgment and the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*, and the Parties shall be restored to their respective positions in the Litigation, as if the Parties never entered into the Settlement Agreement (without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue). In

such event, the Parties will jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel. Further, in such event, PECU will pay amounts already billed or incurred for costs of notice to the Settlement Class, and Claims Administration, and will not, at any time, seek recovery of same from any other Party to the Litigation or from counsel to any other Party to the Litigation.

27.     Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

28.     Without affecting the finality of this Final Order and Judgment, the Court will retain jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

29.     This Order resolves all claims against all Parties in this action and is a final order.

30.     The matter is hereby dismissed with prejudice and without costs except as provided in the Settlement Agreement.

**DONE AND ORDERED** in Austin, Texas on this ___ day of _____, 202__.


_____
HONORABLE LEE YEAKEL
UNITED STATES DISTRICT COURT JUDGE