UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SCOTT BOYD, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br><br>PUBLIC EMPLOYEES CREDIT UNION,<br><br>Defendant | Case No. 1:22-cv-00825-LY |

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND SERVICE AWARDS**

**I.     INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23 and the Court's December 20, 2022 Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (ECF No. 21) in the above-captioned class action, Plaintiff Scott Boyd ("Representative Plaintiff" or "Plaintiff"), by and through Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg" or "Class Counsel"), respectfully submits this Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards ("Fee Motion"). Specifically, Plaintiff moves this Court to approve an award of attorneys' fees and reimbursement of reasonable costs and expenses combined, in the amount of $190,000; and a service award of $1,500 to Plaintiff.

The requested costs and expenses sought are reasonable, and the requested service award constitutes modest compensation to acknowledge Plaintiff's zealous prosecution of this action alongside Class Counsel. Therefore, Plaintiff respectfully requests that this Court grant this Fee Motion.

1

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement (ECF No. 18) filed on December 16, 2022 and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith (ECF Nos. 18-1, 18-2, 18-3, 18-4, and 18-5).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized…by the parties' agreement." The Fifth Circuit has "encourage[d] counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Bridges v. Ridge Nat. Res., LLC,* 2020 WL 7496843, at *1 (W.D. Tex. June 23, 2020) (quoting Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974)). "An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances…In fact, courts have encouraged litigants to resolve fee issues by agreement, if possible." *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 322 (W.D. Tex. 2007) (citing Fed. R. Civ. P. 23(h) and collecting cases). "Accordingly, courts are authorized to award attorney fees and expenses where all parties have agreed to the amount, subject to court approval." *Id.* Here, the Parties have agreed that Class Counsel will seek, and Defendant will not object to, an award reasonable attorney's fees, costs, and expenses in an amount not greater than $190,000, which will be paid by Defendant in addition to other amounts to be paid to the Settlement Class under the terms of the Settlement. *See* Settlement Agreement (ECF 18-2) ("Agr.") ¶ 7.2. As discussed in this Memo, $190,000 is well below 10% of the estimated overall value of the Settlement.

IV.     **ARGUMENT**

       A.     **The Award Sought for Attorneys' Fees Is Reasonable and Appropriate**

Where, as here, a class settlement provides a monetary recovery for the class, the court has discretion to use either the "percentage of the fund" or the "lodestar multiplier" approach (or a combination of the two) to determine a reasonable fee. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) Fifth Circuit courts have repeatedly recognized that in common fund and constructive common fund cases (such as this case), the most appropriate method to use is the percentage-of-the-fund approach, often using the lodestar-multiplier as a "cross-check." *Dell,* 669 F.3d at 643 (recognizing that the percentage method "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members."); Schwartz v. TXU Corp., No. 02-cv-2243-K, 2005 U.S. Dist. LEXIS 27077, at *84 (N.D. Tex. Nov. 8, 2005) ("There is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2016 U.S. Dist. LEXIS 147378, at *61 (E.D. La. Oct. 25, 2016) ("Virtually all of the recent common fund fee awards by district courts in the Fifth Circuit have utilized the percentage method" with "[m]any of these courts includ[ing] an additional step, cross-checking the award against a 'rough lodestar analysis.'"); In re Heartland, 851 F. Supp. 2d at 1072-73, 1078 (applying percentage approach, with lodestar cross-check, to determine reasonable fee for settlement with constructive common fund; citing cases). In the Fifth Circuit, whether the court uses the percentage-of-the-fund and/or the lodestar- multiplier approach, the court must evaluate the reasonableness of the fee in light of the "Johnson factors," which are: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations

imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).

The requested fee here, which was agreed to by the Parties, is reasonable under both the percentage-of-the -fund and lodestar-multiplier approaches and is justified under the circumstances of this case and the application of the *Johnson* factors.

        **1.**        **Plaintiffs' Fees Request Is Reasonable and Appropriate under the Percentage of the Fund Method**

Where the defendant in a class settlement agrees to separately pay attorneys' fees and expenses on top of the monetary relief provided to the class (as opposed to paying both the class and class counsel from a traditional "common settlement fund"), it is proper to consider the attorneys' fees and expenses as part of the total settlement consideration used to apply the percentage-of-the-fund method. See Federal Judicial Center, Manual for Complex Litigation, § 21.7, p. 335 (4th ed. 2004) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses….the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel."); *In re Heartland*, 851 F. Supp. 2d at 1072 (where settlement provides for separate payment by defendant of attorneys' fees on top of the class payments, proper to treat the combination of the class payments and attorneys' fees as a "constructive common fund" used in applying percentage method); *Deepwater Horizon,* 2016 U.S. Dist. LEXIS 147378, at *63 ("[W]hen, as here, the settlement calls for the defendant to fund the payment of attorneys' fees to class counsel, it relieves the class of the burden of paying those fees from the recovery otherwise

available to class members. As such…that amount is properly included in the value of the settlement for fee award purposes.").

The Settlement negotiated by Class Counsel guarantees Settlement Class Members real, meaningful relief for harms and protections for potential future fall-out from the Data Incident. *First*, all Settlement Class Members are eligible to submit a claim for up to $500 for reimbursements for out-of-pocket expenses, fees for credit reports, credit monitoring, or other identity theft insurance products, and lost time for up to three (3) hours at $20 per hour related to the Data Incident. *See* Agr. ¶¶ 2.1.1(a)-(c). If a modest 2% of the 46,337 Settlement Class Members make Valid Claims for this benefit, the potential value of this benefit is as high as $463,370. *Second*, all Settlement Class Members are eligible to submit a claim for up to $2,500 for reimbursements of extraordinary losses related to the Data Incident. *See id.* ¶ 2.1.2. And if a mere 1% of the 46,337 Settlement Class Members make Valid Claims for this benefit, the potential value of this benefit is as high as $1,158,425. *Third*, 2,493 Settlement Class Members who previously enrolled in Experian Identity Works will *automatically* receive one (1) additional year of this benefit, the minimum value of this benefit is $299,760, *guaranteed*. And that is if not a single additional Settlement Class Member signs up for the one (1) year of service being offered to them. If an extremely modest 2% of the remaining 43,839 Settlement Class Members sign up for this benefit, the potential value of this benefit increases to as high as $404,973.60. And, *finally*, Settlement Class Members will benefit from various security-related measures implemented by PECU that will protect their PII in the future.

The attorney's fees and reimbursement of expenses requested by Class Counsel, $190,000, represents less than 10% of the potential settlement value. This percentage is well below the range of percentage fees regularly awarded in this Circuit in comparable cases. See, e.g., *Welsh v. Navy Fed. Credit Union,* 2018 U.S. Dist. LEXIS 227456, at *49 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the

upper end[.]") (citing In re Catfish Antitrust Litig., 939 F. Supp. 493, 503 (N.D. Miss. 1996) ("The petitioners present to the court citations of numerous cases wherein the presiding judge awarded fees within a range of fifteen (15) to fifty (50) percent."); *Schwartz,* 2005 U.S. Dist. LEXIS 28453, at *14-15, ("[C]ourts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method.") (compiling 21 cases where courts awarded a 30% fee or greater); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 U.S. Dist. LEXIS 69143, at *34 (N.D. Tex. Apr. 25, 2018) (approving 33⅓% fee as "within the range of percentage fees awarded in the Fifth Circuit in other complex cases" and noting that "numerous courts in this Circuit have awarded fees in the 30% to 36% range"); *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("[B]ased on the opinions of other courts and the available studies of class action attorneys' fees awards . . . attorneys' fees in the range from [25%] to [33%] have been routinely awarded in class actions. Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Kemp v. Unum Life Ins. Co. of Am.,* 2015 U.S. Dist. LEXIS 166164, at *23 (E.D. La. Dec. 11, 2015) ("In the Fifth Circuit, the average percent awarded as attorneys' fees is 29.5%."); *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) (approving 30% fee as within range of reasonableness and noting that "[i]f the request is relatively close to the average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award").

      Therefore, the requested attorneys' fees and costs combined of less than 10% of the total potential settlement value, or $190,000 is reasonable under the percentage of recovery method. As further discussed below, the requested fees are also reasonable under the Lodestar method.

      **2.**    **Plaintiffs' Fee Request Is Reasonable and Appropriate Under the Lodestar Method**

      Under the lodestar approach, the court first multiplies the number of hours reasonably spent on the case by each attorney's reasonable hourly rate in order to compute the lodestar, and then adjusts

that figure (by applying a multiplier) depending on the respective weights of the twelve factors set forth in *Johnson*. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), cert. denied, 133 L. Ed. 2d 113, 116 S. Ct. 173 (1995); *Johnson*, 488 F.2d at 717-19). To compensate Plaintiffs' counsel for their work in prosecuting this case, it is appropriate to use current billing rates in calculating the lodestar. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied in order to compensate for delay in payment). Courts also determine whether the hourly rates are reasonable by comparing them to prevailing hourly rates in the community for similar services by lawyers of comparable caliber in their skills, legal reputation, experience, and status (e.g., partner, counsel, associate). *See*, *e.g.*, *City of San Antonio v. Hotels.com, L.P.*, 2017 U.S. Dist. LEXIS 58384, at *30 (W.D. Tex. Apr. 17, 2017); *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011).

Here, as reflected in the Declaration of Gary Klinger ("Klinger Decl."), Plaintiffs' counsel collectively spent 200.3 hours litigating this or related actions, for a total lodestar of $167,870.10. The time reflected in Plaintiffs' counsel's lodestar calculations are reasonable, and were necessary for the effective and efficient prosecution and resolution of this litigation. In addition, the fees and expenses incurred in this litigation are all of a type that would normally be charged to a fee-paying client in the private legal marketplace. *See* Klinger Decl., ¶ 29. Plaintiffs' counsel's current rates are also appropriate in light of prevailing rates for similar legal services provided by lawyers of reasonably comparable skill, experience, and reputation. *Id.*, ¶ 24. Other courts have found Plaintiffs' counsel's rates to be reasonable and have approved them. *Id*. *See also*, *e.g.*, *Legere-Gordon v. Firstcredit Inc.*, 2021 U.S. Dist. LEXIS 104612, at *13 (D. Idaho June 2, 2021). Further, Plaintiffs' requested fee award represents only a 1.13 multiplier of Plaintiffs' counsel's collective lodestar. Klinger Decl., ¶ 23. Because there is additional work required to obtain final approval,

monitor the settlement, and assist Class Members, this multiplier will ultimately decrease. *Id.* Therefore, the lodestar/multiplier method here verifies that Class Counsel's fee request is reasonable.

### 1) The *Johnson* Factors Support that the Requested Fee Is Fair and Reasonable under the Lodestar Method

Application of the *Johnson* factors confirms that the requested fee is fair and reasonable under the lodestar method. The twelve *Johnson* factors are:

> (1) The time and labor required….(2) The novelty and difficulty of the questions.…(3) The skill requisite to perform the legal service properly…. (4) The preclusion of other employment by the attorney due to acceptance of the case…. (5) The customary fee [for similar work in the community]….(6) Whether the fee is fixed or contingent…. (7) Time limitations imposed by the client or the circumstances….(8) The amount involved and the results obtained….(9) The experience, reputation, and ability of the attorneys….(10) The "undesirability" of the case….(11) The nature and length of the professional relationship with the client….[and] (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19. Each of the *Johnson* factors will vary, depending on the case, and, rather than imposing a rigid application of each factor, the Fifth Circuit has entrusted the lower courts to apply those factors in view of the circumstances of a particular case. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986). Courts should pay special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel. *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990). Here, all the Johnson factors support the requested fees award.

#### (a) The time and labor required for the litigation

In particular, the first *Johnson* factor (the time and labor required) supports a finding that the requested award of fees is appropriate because this case consumed the attention of partners, associates, and paralegals, who devoted a substantial amount of hours focused on the issues, and flexibility and cooperation to meet the deadlines required. In particular, pursuant to the declarations submitted herewith, Plaintiffs' counsel dedicated a total of 200.3 hours on this matter

as of March 20, 2023, for a total collective lodestar of $167,870.10. Klinger Decl. ¶ 20. Class Counsel, among other things, have:

a. before filing their respective complaints, investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers;

b. conducted a pre-suit factual investigation including interviewing the Plaintiffs and reviewing their documents, background and damages, and continued their investigation during the pendency of this case, by attempting to locate and interview potential witnesses and reviewing hundreds of pages of public documents, including Defendant's public statements, letters to consumers, and website, developing information from third-parties, and scouring internet websites for information about the Data Incident and Defendant's business operations in general and specifically pertinent to the Data Incident;

c. drafted and filed Plaintiffs' Consolidated Class Action Complaint (ECF No. 1);

d. Discussed with Defendant the potential for early resolution, and exchanged confidential information in advance of the mediation, which information provided by Defendant aided Plaintiffs' counsel in developing an understanding the Data Incident, the breadth of the Data Incident, the size and composition of the Class and the potential damages to Class Members;

e. reviewed and analyzed documents produced by Defendant and solicited bids from claims administrators in order to select one;

f. engaged in months of extensive direct negotiations with Defendant through its counsel, and engaged in numerous telephonic discussions, and exchanged

      emails, which included drafts of term sheets in order to resolve this matter, which proved successful in resolving the claims and resulted in the present Settlement;

g. prepared and submitted the Motion to Advise the Court of Settlement and proposed order;

h. prepared and submitted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification, and Approval of Notice Plan (ECF No. 18), and supporting documents, which was ultimately granted when the Court preliminarily approved the Settlement (ECF No. 21); and

i. regularly conferred with the Plaintiff about the status, strategy, and direction of the case and settlement negotiations. Klinger Decl., ¶ 19.

Therefore, the time and labor exerted by Class Counsel in litigating this case and reaching the Settlement supports the requested fee.

### (b) The novelty and difficulty of the questions

The second *Johnson* factor requires courts to evaluate the reasonableness of a requested fee in relation to the difficulty of the question presented in the litigation. *Johnson*, 488 F.2d at 718; *Kemp,* 2015 U.S. Dist. LEXIS 166164 at *31. When analyzing this factor, courts consider the type of case, whether a case has a significant risk of no recovery, whether class counsel has litigated similar cases in the past, the volume of discovery and pretrial practice in the case, and the duration of the litigation. *See In re Heartland*, 851 F. Supp. 2d at 1083; *Klein,* 705 F. Supp. 2d at 677. The factor also weighs in favor of awarding the fee requested because data breach class actions are still new and can present novel and complex issues, making a successful outcome difficult to predict. Klinger Decl., ¶ 11. Further, a successful outcome could only ensue, if at all, after prolonged and arduous litigation with an attendant risk of drawn-out appeals. *Id.* Among national consumer protection class action litigation,

data breach cases are some of the most complex and involve a rapidly evolving area of law. *Id.*, ¶ 14. As such, these cases are particularly risky for plaintiffs' attorneys. *Id.* Class Counsel took on this case and zealously advocated on behalf of Settlement Class Members in spite of the risks and challenges posed, and devoted a substantial amount of time and money to the prosecution of this case, which ultimately resulted in a Settlement this is highly beneficial to the Class. Consequently, the requested fee award appropriately compensates for the risk undertaken by Plaintiffs' counsel here.

**(c)     The skill requisite to perform the legal service properly**

Counsel exemplifies this factor where they "performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution." *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 614 (W.D. Tex. 2010) (citing *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532, at *36 (S.D. Tex. Dec. 18, 2001)). Here, the result achieved in this Settlement is notable because the Parties were able, through capable and experienced counsel, to reach a negotiated Settlement without involvement of the Court in discovery disputes. Klinger Dec., ¶ 12. Class Counsel worked on behalf of the Settlement Class to obtain information from Defendant regarding the Data Incident and used that information (along with their experience and the knowledge gained from other data breach class actions) to negotiate the Settlement. *Id.* ¶ 10. The Settlement reached here is notable for the simplicity of the claims process; the speed with which counsel was able to secure a favorable settlement; and the cooperation of Plaintiffs' counsel which aided in the ability to resolve this matter efficiently. ¶ *Id.*, 12. Therefore, this factor also weighs in favor of approval of the Fee Motion.

11

### (d) Preclusion of other employment by the attorney due to acceptance of the case

The application of *Johnson* factor 4 (preclusion of other employment by the attorney due to acceptance of the case) further supports the requested fees because the pursuit of this litigation was an economic risk for Class Counsel and diverted their resources from other cases and potential cases. *Id.*, ¶ 31. Plaintiff's Counsel invested substantial time, effort and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment. Plaintiff's counsel seek reimbursement of their lodestar already incurred and for time to be spent wrapping up the litigation. *Id.* Plaintiffs' counsel also undertook a risk that any judgment they may have been able to obtain would become uncollectable should Defendant's financial condition become an issue. *Id.* Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorney's fees. *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 615 (W.D. Tex. 2010) Therefore, this factor also favors Plaintiffs' fee request.

### (e) Customary fee for similar work in the community

As discussed previously, the requested the customary billing rates reflect the particular legal expertise of Plaintiffs' counsel, and are based on established competitive market rates for national cases involving complex and class action litigation. Further, as discussed above, the fee requested here represents less than 10% of the potential total settlement value in this case, which is below the normal range typically awarded in similar cases in this circuit. As such, the application of the *Johnson* factor 5 supports the requested attorneys' fees.

### (f) Whether the fee is fixed or contingent

Plaintiffs' counsel undertook this litigation on a purely contingent basis, with no assurance of recovery of expenses or attorneys' fees. *Id.*, ¶ 25. The nature of contingency fees is that they

12

are inherently uncertain and require counsel to assume more risk than in cases where compensation is based on billable hours. *Id.* Accordingly, *Johnson* factor 6 tips the scales in favor of the requested award because the percentage of fee applied to the total recovery obtained for the client reflects the uncertain nature of contingency fee agreements, and the fee percentage is generally one third of the total recovery and can be higher where risk and likely case expenses are expected to be relatively high.

### (g) Time limitations imposed by the client or the circumstances

The time constraints here were typical of like-litigation; therefore this factor is "inapplicable to this case, and [is] therefore neutral." *In re Dell, Inc.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281 (W.D. Tex. June 10, 2010) at *57-58 ; see also *Klein*, 705 F. Supp. 2d at 676 ("not every [*Johnson*] Factor need necessarily be considered"); *Schwartz*, 2005 U.S. Dist. LEXIS 28453, at *15 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.")

### (h) The amount involved and the results obtained

The most critical factor in determining the reasonableness of a fee award is the "degree of the success obtained." *Fessler v. Porcelana Corona De Mex., S.A.*, 2022 U.S. App. LEXIS 804, at *15 (5th Cir. Jan. 10, 2022) (citing *Farrar v. Hobby*, 506 U.S. 103 (1992)). The result achieved in this Settlement weighs in favor of the requested attorneys' fees. This most critical factor supports the requested fee because the Settlement Agreement provides significant monetary and remedial relief. Klinger Decl., ¶ 7. Here, Class Counsel has negotiated four separate significant Settlement benefits on behalf of the Settlement Class: (1) reimbursement of up to $500 per Settlement Class Member for documented ordinary losses, including payment for up to three (3) hours of attested lost time,

compensable at the rate of $20 per hour; (2) reimbursement of up to $2,500 for documented extraordinary losses; and (3) one year of credit monitoring protection services. *See* Agr.¶¶ 2.1.1(a)-(c), 2.1.2, 2.3, 2.4.

Moreover, Defendant has or will implement various security related measures through December 31, 2023, and has agreed to provide Class Counsel with documentation of the same *Id.*, ¶ 8. These security measures are specifically designed to better protect Settlement Class Members' PII and to mitigate the risk of similar data incidents in the future. These information security improvements represent a significant value to Settlement Class Members, and costs associated with them will be paid by Defendant separate and apart from other settlement benefits. *Id.* Therefore, this factor also weighs in favor of approval because Class Counsel achieved an excellent Settlement on behalf of the Class.

### (i) The experience, reputation, and ability of the attorneys

This factor has been addressed under factors 1 and 3 above. Overall, throughout this litigation, Plaintiffs' counsel have demonstrated to the Court that they have competently handled this litigation. As such, the prompt resolution of the case further demonstrates that Plaintiffs' counsel managed this action skillfully, always mindful of Plaintiffs' and Class Members' best interests, while facing challenging opponents, which further attests to the experience, reputation, and the ability of the attorneys involved.

Moreover, the quality of the opposition faced by Class Counsel should also be considered. *Schwartz*, 2005 U.S. Dist. LEXIS 28453, at *18 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation"); *Shaw*, 91 F. Supp. 2d at 970 (finding the presence of "very skilled [opposing] counsel" as relevant to the Johnson analysis). Defendant was represented by knowledgeable and experienced counsel, which engaged a formidable team of highly skilled

14

lawyers with significant experience, therefor this factor also supports the reasonableness of the fee requested. *Id.*, ¶ 16.

### (j) The undesirability of the case

Given that data breach cases pose unique challenges, with areas of law not settled and making outcomes of cases more uncertain and hard to predict, these cases may be less desirable. Class action litigation is more involved, lengthier, and requires more discovery and investigation than other types of litigation, making it exceptionally difficult for those without the requisite knowledge and resources to pursue. Finally, Plaintiffs' counsel here undertook this litigation on a contingency fee basis, which in itself carries more risk. All these factors contribute to the undesirability of the case, and further speak to the reasonableness of the fee requested.

### (k) The nature and length of the professional relationship with the client

Plaintiff's counsel spent a time building relationships with Plaintiff, discussing Plaintiff's claims, and addressing Plaintiff's questions and concerns. As addressed under factor 1, before filing Plaintiff's Complaint, counsel investigated the potential claims against Defendant, interviewed potential plaintiff, and gathered information about the Data Incident and its potential impact on consumers. *Id.*, ¶ 19. Plaintiff's counsel also regularly conferred with the Plaintiff about the status, strategy, and direction of the case and settlement negotiations. *Id.*

### (l) Awards in similar cases

Finally, *Johnson* factor 12 (awards in similar cases) also supports the requested fee award. The Settlement, which represents less than 10% of the potential value of this settlement, is similar to results obtained in other data breach cases. *See Schwartz*, 2005 U.S. Dist. LEXIS 28453, at *14 ( "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method") (compiling cases); *Erica P. John,* 2018

U.S. Dist. LEXIS 69143, at *34 (approving 33⅓% fee as "within the range of percentage fees awarded in the Fifth Circuit in other complex cases" and noting that "numerous courts in this Circuit have awarded fees in the 30% to 36% range."); *Shaw,* 91 F. Supp. 2d at 972 ("attorneys' fees in the range from [25%] to [33%] have been routinely awarded in class actions"); *Kemp,* 2015 U.S. Dist. LEXIS 166164 at *23 ("In the Fifth Circuit, the average percent awarded as attorneys' fees is 29.5%.") *See also*, e.g., *Rodriguez v. Stage 3 Separation, LLC*, No. 14-cv-00603-RP, 2015 U.S. Dist. LEXIS 186251 at *15 (W.D. Tex. Dec. 23, 2015) (finding that a 30% benchmark fee is common in the Fifth Circuit); *Klein*, 705 F. Supp. 2d at 675 (approving 30% fee); *Al's Pals Pet Care v. Woodforest Nat'l Bank,* No. 17-cv-3852, 2019 U.S. Dist. LEXIS 17652 (S.D. Tex. Jan. 30, 2019) (awarding 33% fee).

As discussed further below, under the loadstar multiplier approach the requested fee results in an effective multiplier of 1.13 (and dropping as Class Counsel continued to work on this matter), which is well within the range regularly awarded in comparable class cases in this Circuit and elsewhere.

For these reasons, Class counsel should be reasonably compensated for its successful efforts in representing the Class and achieving a beneficial settlement without the high costs, uncertainty, and delays which would be incurred should litigation in this case continue.

In sum, Class Counsel's requested reimbursement of $190,000 inclusive of costs and fees, or less than ten percent of the potential Settlement value is facially reasonable under the percentage method, and Plaintiffs' lodestar is entitled to a presumption of reasonableness under the lodestar method. Application of the *Johnson* factors confirms the appropriateness of the requested fee award, which, respectfully, should be granted.

### B. Plaintiffs' Expense Reimbursement Request is Reasonable

District courts allow costs and expenses, the sort that lawyers ordinarily include in their bills to clients, to be recovered from the common fund. *See City of San Antonio*, 2017 U.S. Dist. LEXIS 58384, at *54; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012); Fed. R. Civ. P. 23(h) (authorizing the recovery of "nontaxable costs"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 334 (W.D. Tex. 2007) ("The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients."). The declarations filed herewith demonstrate that the expenses sought to be reimbursed were all advanced by Plaintiffs' counsel, were necessarily incurred in the prosecution of this case, and were also properly documented and prepared using contemporaneous time records. *See* Klinger Decl., ¶ 28. Such costs and expenses included research, court fees, and other services that are necessary and reasonable to prosecuting a class action. *Id.* The requested reimbursement of $605.00 in costs and expenses therefor are appropriately reimbursable to Plaintiff's counsel.

### C. The Requested Service Awards Are Warranted

Class Counsel move this Court to approve a service award of $1,500 to Plaintiff for their service as Class representative. Courts approve reasonable service awards to compensate the named plaintiffs for their services. *Guadalupe v. Am. Campus Cmtys. Servs.*, 2020 U.S. Dist. LEXIS 259660, at *7 (W.D. Tex. Oct. 23, 2020); *see also Matson v. NIBCO Inc.*, 2021 U.S. Dist. LEXIS 201909, at *36 (W.D. Tex. Oct. 20, 2021) (finding that an award of $10,000 to each plaintiff was appropriate under the circumstances of the case and would adequately compensate plaintiffs for the service they provided and the burdens they shouldered.); *Blackburn v. Conduent Commer. Sols. LLC*, 2020 U.S. Dist. LEXIS 255284, at *8 (W.D. Tex. Dec. 22, 2020) (approving an award of $2,500 where plaintiff was instrumental in identifying the alleged violation and

building the case). Likewise, Plaintiff here has been instrumental in assisting Plaintiff's counsel throughout this proceeding. Klinger Decl., ¶ 35. His involvement was not merely nominal. *Id.* He initiated and remained in contact with Plaintiffs' counsel; considered and questioned various pleadings in this case, including the Consolidated Complaint and settlement papers; supervised, and monitored Plaintiff's counsel; provided background documents; followed the progress of this litigation; and has been actively involved in the prosecution of the case, to ensure that Class Members received the best recovery possible given the particular circumstances and risks of the case. *Id.* Balancing the services that Plaintiffs rendered against the modest amount of the $2,000 each requested, the Court should find such amount is reasonable.

## V.   CONCLUSION

For these aforementioned reasons, the Court should grant Plaintiffs' Fee Motion.

Respectfully submitted,

DATED:  March 20, 2023

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Mr. Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com

*Counsel for Plaintiffs*
*Interim Class Counsel*

\* Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March, 2023, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the Western District of Texas via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

Date: March 20, 2023                                  /s/ Gary M. Klinger