**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SCOTT BOYD, *on behalf of himself and all others similarly situated,* | ) ) ) | Case No. 1:22-cv-00825-LY |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PUBLIC EMPLOYEES CREDIT UNION | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM IN SUPPORT**

Plaintiff Scott Boyd submits this Motion for Final Approval of Class Action Settlement and Memorandum in Support.

## I.   INTRODUCTION

On December 20, 2022, this Court preliminarily approved the Settlement between Plaintiff Boyd and Defendant Public Employees Credit Union. ("PECU"), and ordered that notice be given to the class. ECF 21. The Settlement negotiated on behalf of the Class provides for four separate categories of significant relief available to Settlement Class Members: (1) reimbursement of up to $500 per Settlement Class Member for documented ordinary losses, including payment for up to three (3) hours of attested lost time, compensable at the rate of $20 per hour; (2) reimbursement of up to $2,500 for documented extraordinary losses; (3) one (1) year of Equifax Identity Works credit monitoring services; and (4) information security improvements implemented by PECU.

Plaintiff here negotiated for significant additional identity theft protection for the Settlement Class. Settlement Class Members who previously enrolled in the Experian Identity Works credit monitoring services offered by PECU in the incident response will be automatically

1

provided one (1) year of additional identity theft protection services without the need to make an affirmative claim. Settlement Class Members who did not previously enroll in the identity protection services offered by PECU during the incident response were eligible to submit a claim for a year of the same credit monitoring. *Id*. The retail value of this service is $120 per Class Member, as outlined in Plaintiff's Motion for Preliminary Approval (ECF 18-1, page 7).

Settlement Class Counsel zealously prosecuted Plaintiff's claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arms'-length negotiations. This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by PECU, which was represented by a well-regarded AmLaw 100 law firm – Baker Hostetler. Although Plaintiff believes in the merits of his claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiff would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representative that the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 97.2% of the Class, easily meeting the due process standard. *See* Declaration of Scott Fenwick in Connection with Motion for Final Approval, attached hereto as Exhibit 1, ¶ 13. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. *Id*. at Exhibits B and C. Out of 46,612 Settlement Class Members, only seven (7) sought to be excluded from the

Settlement, and **none** have objected. *Id*. ¶ 16; *see also* Declaration of Gary Klinger, attached as Exhibit 2, ¶ 2.  Moreover, CAFA notice was timely given to both the federal and states' attorneys' general, and there has been no comment or objection there either. Ex. 1, ¶ 5; Ex. 2, ¶ 3.

Plaintiff now moves the Court for final approval. The Settlement meets all the criteria for final approval.  The Court should grant final approval, and also grant the Plaintiff's request for attorneys' fees, expenses, and a service award.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to and hereby incorporate Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support (ECF 18 and ECF 18-1) filed on December 16, 2022 and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith**.** Plaintiff also incorporates by reference the Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 22), filed on March 20, 2023.

## III.    SUMMARY OF SETTLEMENT

### A.    <u>Settlement Benefits</u>

The proposed Settlement Class consists of: "All persons who were sent written notification by Public Employees Credit Union ("PECU") that their PII was potentially compromised as a result of the unauthorized access to PECU's network that PECU discovered on or about April 26, 2022 (the "Data Incident")." S.A. ¶ 1.24.. The Settlement Class includes approximately 46,612 individuals.

#### 1.    *Documented Ordinary Expenses and Lost Time Reimbursements*

Settlement Class Members are eligible for: (a) ordinary expense reimbursements for out-of-pocket expenses related to the Data Incident: (b) fees for credit reports, credit monitoring, or

other identity theft insurance product purchased between April 26, 2022 through and including the end of the Claims Deadline related to the Data Incident; (c) up to three (3) hours of lost time spent dealing with the Data Incident (calculated at the rate of $20/hour). S.A. ¶ 2.1.1. Claims for ordinary expense reimbursements and/or lost time are capped at $500 cap per Class Member. *Id.*

### 2. *Documented Extraordinary Expense Reimbursements*

Settlement Class Members are eligible for extraordinary expense reimbursements up to $2,500 per Settlement Class Member, if the Settlement Class Member can show through the class process that the monetary loss: (i) is actual, documented, and unreimbursed; (ii) is more likely than not caused by the Data Incident; (iii) occurred between April 26, 2022 and the Claims Deadline; (iv) is not already covered by one or more of the above-referenced reimbursed expenses; and (v) the Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* ¶ 2.1.2.

### 3. *Credit Monitoring and Identity Theft Protection Services*

Settlement Class Members who previously enrolled in the 12-month Experian Identity Works credit monitoring and identity theft protection services, with $1 million dollars insurance coverage, will be *automatically* provided an additional year of the same services, *without the need to make an affirmative claim*. *Id.* ¶ 2.3. Settlement Class Members who did not enroll in these services will be eligible to submit a claim for one year of the same services. *Id.* Settlement Class Members will be able to activate these services after Final Approval by the Court. *Id.*  PECU will pay for these services separate and apart from other settlement benefits. *Id.*

This benefit of the settlement bears with it significant value. The Experian product offered in response to the Data Incident is not offered at retail, but the comparable product at retail is $9

per month (billed annually). Thus, the value of one year of this service is $120 per Settlement Class Member. During settlement negotiations, it was discovered that 2,498 Settlement Class Members signed up for these services. Since this product will be automatically renewed for an additional one-year term for these 2,498 Settlement Class Members, the minimum value of this settlement benefit is $299,760, *guaranteed*. And that is if not a single additional class member signed up for the one-year of service being offered to them. However, in this case, an additional 78 persons claimed the credit monitoring, bringing the total value of this benefit up to $309,120.

4.    *Security-Related Improvements*

PECU has agreed to implement and/or maintain certain security measures and enhancements in response to the Data Incident through December 31, 2023. *Id.* ¶ 2.4. Costs associated with these information security improvements will be paid by PECU separate and apart from other settlement benefits. See id. These measures are designed to better protect Settlement Class Members' PII and to mitigate the risk of similar data incidents in the future. See id. This is another substantial benefit that the entire Settlement Class will enjoy—enhanced protection of their sensitive, confidential data for the present and the future.

**B.  Fees, Costs, and Service Awards**

Plaintiff previously moved for a combined attorneys' fee and expense award of $190,000. *See* ECF 22. Plaintiff also moved for and seeks a reasonable service award in the amount of $1,500 for the named Plaintiff.  There has been no objection to the attorneys' fee request, and no opposition was filed to Plaintiff's motion for attorneys' fees, expenses, and service awards.

**IV.  LEGAL STANDARD**

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. The general standard for final

approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

(2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). *See also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

## V.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate.

Under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant the instant motion seeking final approval of this Settlement. Here, "[n]othing has occurred

that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021). In fact, the response of the Class Members to the Settlement (only 7 requests for exclusion and no objection out of a class of over 46,000 Settlement Class who were sent notice by first-class mail) further underscores that the Settlement is, in fact, fair, reasonable, and adequate. For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should find that the settlement is fair, reasonable, and adequate.

1. **Plaintiff and Class Counsel Have Provided First-Rate Representation to the Settlement Class.**

Plaintiff and Class Counsel have provided excellent representation for the Settlement Class and satisfy the adequacy of representation factor under Rule 23(e)(2)(A). Plaintiff has no conflicts of interest with other Class Members, are subject to no unique defenses, and he and his counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. *See generally* Klinger Decl., ECF 18-3. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. ECF 18-3, ¶¶ 3-26; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Class Counsel also conducted a thorough investigation of the facts both before and during the course of the Litigation. This investigation allowed Class Counsel to better understand the key factual issues at the core of the Litigation in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

Having completed their investigation and given the risks of no recovery at all, Class Counsel, together with Plaintiff settled this Litigation on a favorable basis to the Class without unduly prolonging it and without the expense and risk of a trial and any subsequent appeals.

### 2. The Settlement was the Result of Arms-length Negotiations and Without Fraud or Collusion.

The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. Before filing the Complaint, Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Breach and its potential impact on consumers. Thus, Class Counsel's appreciation of the merits of this case prior to settlement, and their extensive experience in litigating other class cases in this area of the law throughout the country, allowed them to engage in vigorous, arms-length negotiations with Defendant. *See In re Heartland Payment Sys.,* 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The negotiations in this matter occurred at arm's length. *See* ECF 18-3 at ¶ 37. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

Here, not only is the Settlement the result of arm's-length negotiations, but the matter of attorneys' fees was not discussed until after the class benefits were reached. ECF 18-3 ¶ 65. Thus, there is no threat of fraud or collusion affecting the fairness of the settlement negotiations. *See In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.*, 968 F.

Supp. 1116, 1127 (W.D. La. 1997) ("Further, testimony was presented that the matter of attorneys'
fees was not negotiated in conjunction with the settlement agreements but left for separate
determination by the Court.")).

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class
actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am.,
Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331).
"When the prospect of ongoing litigation threatens to impose high costs of time and money on the
parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*,
705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).  Here,
Defendant repeatedly denied their liability and planned to file motions to dismiss.

This case is settling in its early stages; if the Settlement is not finally approved, the parties
will likely need to litigate through multiple dispositive motions, a motion for class certification, a
potential motion to decertify the class, and multiple *Daubert* motions, among other things. That
process would likely take years to resolve and involve expensive expert discovery. Yet there is no
guarantee lengthy litigation and expensive discovery would lead to greater benefits for Class
Members. Instead, there would be multiple inflection points at which the Class Members' claims
could be narrowed or dismissed. Moreover, the parties will bear the cost of this litigation if it
continues. An early resolution, before both sides spend significant sums on litigation costs, is in
the best interest of the Settlement Class.

While Plaintiff believes he has strong claims and would be able to prevail, success is not
guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where
chances of prevailing on the merits are uncertain – especially where serious questions of law and

fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). "Settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. .

### 4.  The State of Litigation and the Available Discovery.

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 (W.D. Tex. Feb. 21, 2007).

Here, during the settlement negotiations Defense Counsel shared with Class Counsel significant information about the scope of the Data Breach, the number of class members, and the Defendant's remedial efforts. Drawing on their significant and substantial experience in other data-breach class action litigation, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. ECF 18-3 ¶ 37. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors final approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

**5. The Settlement Terms Represent a Highly Favorable Compromise that Appropriately Balances the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks.**

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *DeHoyos*, 240 F.R.D. at 290 ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."); *Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both of these factors likewise weigh in favor of final approval.

As outlined above, this Settlement guarantees Class Members real relief for harms and protections from potential future fall-out from the Data Breach. The Settlement is similar to results

obtained in other data breach cases, which include for instance: *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Chacon v. Nebraska Med.*, No. 8:21-cv-00070 (D. Neb. Sept. 15, 2021) (data breach settlement providing up to $300 in ordinary expense reimbursements including to 6 hours of lost time at $20 per hour; up to $3,000 in extraordinary expense reimbursements; one-year of automatic credit monitoring; data security enhancements); *Chatelain v. C, L & W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (Tex. 42d Dist. Ct. Taylor Cnty. Nov. 5, 2020) (data breach settlement providing 12-months of credit monitoring services and no expense reimbursements).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. should litigation continue, Plaintiff would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex

class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty.

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Another significant risk faced by Plaintiff here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiff "necessarily risk[ed] losing class action status." *Grimm v. American Eagle Airlines, Inc*., No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-

324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). Only four significant data incident class actions have been certified on a national basis, and one (*In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *6 (M.D. Fla. Apr. 14, 2021)) is currently on appeal to the United States Court of Appeals for the Eleventh Circuit. It is currently an open question whether the *Brinker* plaintiffs will maintain class certification. This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiff.

Plaintiff dispute the defenses PECU asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### 6. Class Counsel and Plaintiff Believe that the Settlement is in the Class's Best Interests.

Plaintiff and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Class Members, which is an important consideration in any class settlement analysis. ECF 18-3 ¶ 28. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."); *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330). Here, Settlement Class Counsel are all highly experienced in class action litigation and were well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. ECF 18-3 ¶ 3-26. The assessment of

Class Counsel weighs in favor of final approval. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

### 7. The effectiveness of the proposed method of distributing relief to the Class supports approval of the Settlement.

Subject to Court approval, almost 2500 Class Members will have the terms of their credit monitoring automatically extended by a year. Eligible claims will be paid either electronically or by written check. Settlement checks and credit monitoring codes for new enrollees will be delivered by U.S. mail, first-class postage prepaid. All payments will be made approximately 45 days after the Effective Date. This is a simple, clean, and effective distribution process.

### 8. There is no agreement required to be identified under Rule 23(e)(3).

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There are no agreements between the Parties here except those set forth or explicitly referenced in the Settlement Agreement. This factor is not relevant to whether the Settlement should be finally approved.

### 9. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a notice plan that is designed to reach as many Class Members as possible and provided Class Members with direct mail notice of the Settlement. It also informed Class Members of their right to object to, or opt out of, the Settlement. All Class Members were eligible to make a claim for the same amount of Out-of-Pocket expense reimbursements and lost time. Moreover, 1-year of credit monitoring is made

available to all Class Members. Thus, the Settlement treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

    **10. Reaction of the Class Members**.

    The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a class of 46,612, only seven Class Members requested exclusion and there were no objections. *See* Exhibit 1, ¶ 16. 167 total claims were submitted, including 164 timely claims from Settlement Class Members. *Id*. at ¶ 14. If one adds only the timely claims (164) with the number of persons receiving the automatic renewal of the credit monitoring (2,498), 5.7% of the Settlement Class will receive a benefit from this Settlement. This percentage is commensurate with and exceeds the claims rates in approved data breach settlements across the country, including both common fund and claims-made settlements. *See* Ex. 2, ¶ 4.

    Plaintiff and Class Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, that it meets each of the Rule 23(e)(2) and *Reed* factors, and final approval should be granted.

    **B. The Court Should Finally Certify the Settlement Class.**

    Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the Settlement Class. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and pertinent Rule 23(b) factors since preliminary approval, that decision should be made final, for the reasons

set forth in the Plaintiff's Preliminary Approval Motion and Supporting Memorandum. *See*

ECF 18 and 18-1.

   **C.  The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process Considerations.**

   To satisfy due process, notice to class members must be the best practicable, and

reasonably calculated under all the circumstances to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips*

*Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient

to allow class members "a full and fair opportunity to consider the proposed decree and develop a

response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While

individual notice should be provided where class members can be located and identified through

reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means.

Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

   Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice

programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342,

(N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v.*

*Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D.

Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement

Class Members of the nature of the action, the definition of the class, the claims at issue, the ability

of a class member to object or exclude themselves, and/or enter an appearance through and

attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See* *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On February 3, 2023, Kroll caused the "Short Notice" in the form of a postcard to be sent by U.S. first class mail to 46,612 Settlement Class Members. Ex. 1, ¶ 9. The Short Notice provided an overview of the settlement terms, the benefits available, the options available to Class Members, and the settlement website and toll-free number where additional settlement information could be obtained. *Id.*, Ex. C. After all address tracings and remailings, Kroll delivered 45,303 Short Notices, equating to a delivery success percentage (or "reach rate") of 97.2. *Id.* at ¶ 12. Kroll (through its representative Ms. Fenwick, an experienced professional in the field of providing class action notice) offers the opinion that the delivery success percentage of 97.2% meets and exceeds the 70% threshold necessary to satisfy due process requirements. *Id.*

Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in Texas, the Fifth Circuit and across the United States. 97.2% is considered a "high percentage," and is within the "norm." *See* Barbara J.

Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010).

In addition to the direct mail notice, Kroll established a dedicated website for the Settlement with an easy to remember domain name (www.PECUSettlement.com). *Id*. ¶ 8. Relevant documents were posted on the website for Settlement Class Members to review. *Id*. Also, on December 29, 2022, a toll-free telephone number (833-709-0096) was established for the Settlement. *Id*. ¶ 7. The toll-free telephone number was prominently displayed in all notice documents. Settlement Class Members could call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system. Settlement Class Members also had the option to leave a voice message requesting a returned call. As of May 12, 2023, the IVR received 239 calls and forty-nine (49) voice messages requesting a returned call. Id.

In short, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23, and satisfies due process requirements. The Notice Plan provided the best notice practicable, and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and granting the request for attorneys' fees, expenses, and service awards.

Dated: May 26, 2023                          Respectfully submitted,

                                             /s/*Gary M. Klinger*
                                             Gary M. Klinger (admitted *pro hac vice*)
                                             **MILBERG COLEMAN BRYSON**
                                             **PHILLIPS GROSSMAN, PLLC**
                                             227 Monroe Street, Suite 2100
                                             Chicago, IL 60606
                                             Phone: (866) 252-0878
                                             Facsimile: (865) 522-0049
                                             Email: gklinger@milberg.com

                                             Joe Kendall
                                             **KENDALL LAW GROUP, PLLC**
                                             3811 Turtle Creek Blvd., Suite 1450
                                             Dallas, TX 75219
                                             Telephone: 214-744-3000
                                             Facsimile: 214-744-3015
                                             jkendall@kendalllawgroup.com

                                             *Attorneys for Plaintiff and the Settlement*
                                             *Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Gary M. Klinger, hereby certify that a copy of this Plaintiff's Motion for Final Approval of Class Action Settlement and Memorandum in Support was sent to counsel of record via the federal court's e-filing system.

Dated:  May 26, 2023                                 By: *_/s/Gary M. Klinger_____*